EDWIN LUCAS *vs.* EDWIN A. BIRDSEY.

The plaintiff's son owned a horse and sold it to the plaintiff, who wanted it for the purpose of exchanging it for a certain other horse. The son acted as agent for the plaintiff in negotiating the exchange, and kept possession of the horse while the negotiation was pending. After the exchange was effected the plaintiff agreed to sell the horse taken in exchange to his son, who was to take possession, but no title was to vest until a stipulated price was paid. While the son held the horse and before he had paid the price, it was attached by one of his creditors. Held—1. That the possession of the son was a lawful possession as vendee, and not a fraudulent possession as vendor; the possession by him of the first horse after the sale not affecting his possession of the other horse after the exchange. 2. That having no vested title the horse could not be taken as his by his creditors.

And it seems that replevin could be maintained for the horse by the father without previous demand.

REPLEVIN, to recover possession of a horse unlawfully detained; brought to the Court of Common Pleas of Hartford County, and tried, on an issue closed to the court, before *Briscoe, J.* The following facts were found by the court and made a part of the record.

The plaintiff at the time the present suit was brought was, and for six years had been, a resident of Berlin, in Hartford County. The defendant then was, and for several years had been, a resident of Meriden, in New Haven County, where Charles Lucas, a son of the plaintiff, also resided.

On the 12th of April, 1873, Charles Lucas owned a black horse, which he was led to believe could be exchanged for a white one owned by one Cooley, of Meriden, on the payment of $200, and drove with the black horse to Berlin, and there told his father about the white horse, and upon what terms it could probably be had. The plaintiff then, with the view of buying the white horse for himself, agreed with his son to buy of him his black horse, and paid him $75 for it; it being then agreed between them that the black horse was the property of the plaintiff.

At that time it was not certain that the exchange could be effected, and the son returned to Meriden with the black horse, with the understanding that if the exchange was not

made the black horse was to be retained by the son and the money paid therefor returned to the plaintiff.

On the 15th of April, Charles, having ascertained that Cooley would exchange horses for $200 to boot, returned to Berlin and so informed the plaintiff. Thereupon the plaintiff gave his son a draft for $200, the son at the same time giving his father a note for $200, dated April 15th, 1873. The money upon the draft was drawn from a Meriden bank on the following day, and returned to the plaintiff upon the same day, when the plaintiff met his son in Meriden and went with him to the stable of Cooley to perfect the exchange. Cooley not being then present, the father left for a short time, handing the money to his son with directions to wait and complete the trade with Cooley if he returned before the plaintiff. The plaintiff returned in a short time, but in his absence Charles paid the $200 to Cooley. The black horse was then delivered to Cooley in the presence of the plaintiff. The plaintiff then, in the presence of Cooley, and two others, said the white horse was his own, and told his son that he must not sell or exchange the horse till he had paid him for it. The plaintiff and his son then went to another place, and the son executed and delivered to his father a note for $75, dated April 17th, 1873.

When the $200 note was given by Charles to his father, it was agreed and fully understood by them that the trade should be made and finished in the way it was afterwards done, and that the white horse was to belong to the plaintiff until he was paid; and all the acts of the plaintiff and his son were done with the design and understanding that the plaintiff should become the owner of the white horse, and that Charles should have no title to the horse until the plaintiff was paid in full; and under this understanding the son took the white horse into his possession, and so continued in possession until the horse was attached by the defendant in a suit brought by him against Charles for a debt which had accrued prior to the exchange.

The notes were never paid by Charles, nor any portion of them, nor were ever given up to him. It appeared that the

plaintiff had made some declarations inconsistent with his present claim, but the details are unimportant except as affecting the question of fact.

The defendant claimed that the sale of the black horse by the son to his father, the son retaining possession of the same, was fraudulent and void as against any of the creditors of the son, and that it still remained in law the property of the son at the time of the exchange for the white horse. Also that the possession of the white horse by the son under the circumstances was a badge of fraud, and calculated to deceive innocent parties, and that the white horse was at the time of the attachment liable for the son's debts, at least to the value of the black horse. Also that the plaintiff's claim was unwarranted in law, as it amounted to no more than a mortgage, he never having had possession of the white horse.

The court, however, found as a matter of fact that the white horse became the property of the plaintiff by the exchange, and that the sale of the horse to Charles, so far as it was a sale, was conditional, and that it was not to become his property until the notes were paid, and that it was held by him as the property of the plaintiff at the time of the attachment. The court therefore overruled all the claims of the defendant, and rendered judgment for the plaintiff.

The defendant brought the record before this court by a motion in error, assigning as error the holding by the court that the plaintiff acquired any title to the white horse; the holding that the plaintiff was entitled, even if he had title, to the immediate possession of the horse; that he could sustain the action without a previous demand; that while the retention of possession of the black horse by the son after the sale and before the exchange was fraudulent, the retention of the possession of the white horse taken in exchange was not consequently fraudulent also; and in holding that the plaintiff's title was anything more than that of a mortgagee, and good without possession of the property mortgaged.

*R. Hicks*, for the plaintiff in error.

*Hungerford*, for the defendant in error.

PHELPS, J.   The policy of our law forbids the retention by the vendor of the possession of personal chattels after a sale, and, except as between the parties, makes such retention very strong, if not indeed conclusive, evidence of a colorable sale.   An attaching creditor in a suit against the vendor may disregard such sale and take the property, if still in the possession of the vendor after the vendee has under the circumstances had reasonable time and opportunity to take possession.

The plaintiff in error claims that the facts in this case bring it within the above stated familiar principle, but in our opinion the Court of Common Pleas correctly adjudged otherwise.   The record shows that the plaintiff's son owned a horse and sold it to his father, who made the purchase for the purpose of obtaining by way of exchange another horse owned by another person.   He employed the son as his agent to make the exchange, and for that object, which was expected to be soon accomplished, allowed the son to continue in possession of the horse.   Upon the exchange being made the son immediately purchased the last mentioned horse and kept possession of it under such purchase, but by express agreement no title was to vest in the son until he had paid the stipulated price.   Before payment was made the horse was attached by a creditor of the son.   At the time of the attachment therefore the son was holding the horse under a contract of purchase.   His possession was that of a vendee, and was not necessarily prejudiced by the fact that the title, in consequence of the then unfulfilled performance of the condition by the vendee to make payment, had not vested. If the first horse had been attached in his hands after the sale to the father and after a reasonable time for him to have taken possession had elapsed, or if the second had been attached as the property of the father after the exchange and before payment of the agreed price, the attaching creditor would thereby have obtained a valid lien ; but we are not prepared to hold that, because the retention by the vendor under the sale of the first horse would have been held conclusive evidence of a colorable sale, the possession by him of

the second after such exchange and the subsequent purchase by him would consequently have that effect.

As a conditional vendee he had before performance no title, and therefore no attachable interest, and we do not see that he can justly be regarded as a vendor improperly retaining possession of the second horse on the ground that he was the original owner and vendor of the first and retained possession of that until the exchange for the second and his purchase of it were made.

The plaintiff in error seems also to rely on the fact that after these transactions the father made certain declarations with respect to them inconsistent with the claims which he now makes.   Those declarations only affected legitimately the question whether there was a bonâ fide sale by the father to the son of the horse received in exchange, and the finding of the court below that there was such a sale is conclusive with regard to it.

There is no error.

In this opinion the other judges concurred.