## THE CENTRAL LOAN & TRUST CO. v. THE CAMPBELL COMMISSION CO.

1. ATTACHMENT—*Order of Probate Judge.* Under the provisions of §§ 4120 and 4121 of the code, Laws of 1893, a judge of probate is authorized to grant an attachment in a cause pending in the district court, where it is made to appear that the judge of said district court is absent from the county, at the time of granting such attachment; and where a proper showing is made, authorizing an attachment under said sections; and said sections are not invalid, as being in conflict with the Organic Act of this territory.

2. ATTACHMENT—*Jurisdiction—Service.* It is indispensable, to give a court jurisdiction in attachment proceedings, that there should be personal service to the summons in the action upon the defendant, or that the order of attachment be levied upon property of the defendant, or that an order of garnishment should be served upon a garnishee having property in his possession belonging to the defendant, or who is indebted to such defendant. Where there has been no personal service, in an action, and no property of the defendant seized under an attachment, and no property or credits belonging to the defendant, reached by an order of garnishment, the court has acquired no jurisdiction; there being neither a service upon the defendant nor any seizure of his property, there is nothing for the jurisdiction to rest upon, and any proceedings taken in the cause are *còram non judice* and void, and the cause must be dismissed.

*Error from the District Court of Noble County.*

### STATEMENT OF FACTS.

On July 2, 1895, plaintiff in error commenced an action in the district court of Noble county, on a certain promissory note given by defendant in error, on September 1, 1894, due two years after date, for the sum of $15,000 with interest at 8 per cent., which note had been duly transferred to plaintiff in error, in the usual course of business. The note, at the commencement of the action, had not become due. Plaintiff asked judgment in accordance with the terms of the note and that attachment issue against the property of the defendant in error on the grounds that the defendant in error was a foreign corporation and was then about to sell and convey its property with the fraudulent intent to hinder and delay its creditors. The judge of the district court, in which said action was commenced, being absent from the county, an application was made in due form to the judge of the probate court of said county for an order of attachment in said action. Such application was granted by said probate judge and an order of attachment was thereupon issued by said judge to the clerk of the district court of said county, and said clerk issued said attachment and delivered the same to the sheriff of the county for service. At the time of filing the action, a summons was issued to the defendant, which was on July 12, 1895, returned " Not found." On July 3, 1895, the attachment was levied upon about 5,000 head of steers, as the property of defendant, which were appraised at $25 per head. On July 29, 1895, an affidavit of service by publication was filed in the action, and publication was made, notifying defendant to appear and answer on or before September 2, 1895. On July 6, 1895, a

garnishment summons was issued in said action and served upon one A. H. Pierce. On August 26, 1895, Pierce answered said garnishment and filed an interplea in the action, claiming the attached property, under a vendor's lien, and filed a motion to discharge the attachment. The answer of the garnishee showed that he was in the possession of the cattle as vendor of the same, under a vendor's lien, by virtue of a written contract of sale, from him to said defendant, by which he reserved title to said cattle until the terms of said contract should be complied with by the defendant; that at the time of the service of the said garnishment, the defendant was owing him the sum of about $75,000, upon said contract; that prior to the levy of the attachment and the service of the garnishment order, the defendant had parted with all his interest in and to the property, and had sold the same to one Stoddard, as trustee, to secure the payment of a number of promissory notes for about the sum of $30,000, due and payable to various banks. And that at the time of the service of said order of garnishment, defendant had no interest in said cattle but that all the interest that said defendant had ever had therein, was then owned by said Stoddard. Said garnishee further answered that at the date of the service of said garnishment, nor at any time, was he indebted to the defendant in any amount whatever, nor did he have any money, property or effects in his hands, or under his control, belonging to said defendant, or in which defendant had any interest. No answer was filed to this return of the garnishee, or any denial made thereof by the plaintiff in error, or any issue made thereon; but an order was made in said cause requiring said Stoddard to interplead in the action, and also ordering that George W. Miller and J. C. Miller be made parties thereto, and that they interplead therein.

That thereafter, the said Stoddard and the said Miller and Miller filed their interpleas in said cause, the interplea of said Miller and Miller reciting the said contract for the sale of said cattle, between said Pierce and the defendant, and that said contract was made and entered into be defendant for the sole use and benefit of said Miller and Miller; that the said defendant had no interest whatever in said contract or said cattle, except that the same when sold, were to be shipped to said defendant to be sold upon the market by it, as a commission company, for a commission of fifty cents per head; that all of said property was the absolute property of the said Miller and Miller, subject only to the claim of said Pierce, under said contract. On September 7, 1895, an order was made in said cause, by consent of the plaintiff and of said Pierce, appointing Pierce receiver, without bond, to market the cattle on the open market, to pay himself out of the proceeds and to hold the balance subject to the order of the court. Pierce qualified as receiver and proceeded to market the property and filed his report in the case. The report showed sales amounting to $105,062.56. and that after paying expenses and the amount due the receiver on his claim, there was a balance remaining in his hands of $22,361.64. On November 11, 1895, the defendant in error, filed a plea to the jurisdiction of the court, on the following grounds: Second. "Because no actual service has been had upon this defendant, by service of summons within Noble county as required by law." Third. "Because there has been no seizure of any of defendant's property within the jurisdiction of this court, either by attachment or garnishment process," and fourth, "because the pretended seizure of such property is void, as a basis or jurisdiction, because there was no actual or constructive service of any attachment or

garnishment order on this defendant." On December 16, 1895, an amended plea to the jurisdiction was filed by defendant in error, in which the following additional grounds were stated: "Because there is no basis for service by publication herein, for the reason that all the attachment proceedings were void for want of power in the probate judge to grant the attachment on the plaintiff's demand before the same was due." On the same day the court sustained the plea to the jurisdiction, on the additional ground stated in said amended plea and overruled it on each of the other grounds stated; and dismissed the cause for want of jurisdiction. The plaintiff in error excepted to the ruling of the court sustaining the motion, and the defendant in error also excepted to the ruling, denying the motion, upon the other grounds enumerated therein, and the cause is here upon petition and cross-petition in error, for decision upon the ruling of the court upon the entire motion.

*Harris & Lafferty* and *William L. Williams* for plaintiff in error.

*Asp, Shartel & Cottingham*, for defendant in error.

The opinion of the court was delivered by

TARSNEY, J.: Two questions are presented by this record. First, was the court below without jurisdiction and were its proceedings void on account of the order of attachment having been granted by the probate judge ? And, second, if the probate judge had jurisdiction to order the attachment to issue, had the district court acquired jurisdiction to hear and determine the cause under the proceedings had therein, prior to the order of dismissal?

Sections 4120 and 4121, Statutes of 1893, relating to civil procedure are as follows:

"Sec. 4120. Where a debtor has sold, conveyed, or otherwise disposed of his property with the fraudulent intent to cheat or defraud his creditors, or, to hinder or delay the collection of their debts or is about to make such sale or conveyance or disposition of his property, with such fraudulent intent, or is about to remove his property or a material part thereof, with the intent or to the effect of cheating or defrauding his creditors or of hindering them or delaying them in the collection of their debts, a creditor may bring an action on his claim before it is due and have an attachment against the property of the same debtor.

"Sec. 4121. The attachment authorized in the last section may be granted by the court in which the action is brought, or by the judge thereof, or in his absence from the county, by the probate judge of the county in which the action is brought; but, before such action shall be brought or such attachment shall be granted, the plaintiff or his agent or attorney shall make an oath in writing showing the nature and amount of the plaintiff's claim, that it is just, when the same will become due, and the existence of some one of the grounds for an attachment enumerated in the preceeding section."

The contention of the defendant in error upon the first proposition involved in this case is, that under the Organic Law the legislature of the territory has no power to devolve the functions of the district court on any other person or tribunal than the regularly appointed judge of said court; and that the above act of the legislature, wherein it attempts to confer authority upon the judge of the probate court to grant attachments, is unconstitutional and void; that the powers and functions of a probate court, or of the judge thereof, are, under the Organic Act, confined to probate matters; and

26—v.

that authority cannot be conferred upon them by the legislature, in matters other than matters of probate.

When courts are called upon to declare an act of the legislature unconstitutional, and therefore void, the authority of the legislature ought not to be a matter of doubt, but the want of such authority should clearly appear, and no act should be declared unconstitutional unless the court, so declaring, can say that its infringement of the superior law is clear, beyond reasonable doubt. Every presumption is in favor of the validity of a law regularly enacted by the law-making power. The provision of the Organic Act of this territory, vesting its judicial power, is as follows:

"That the judicial power of said territory shall be vested in a supreme court, district courts, probate courts and justices of the peace.    *    *    The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate court and of the justices of the peace, shall be as limited by law; *Provided*, that justices of the peace who shall be elected in such manner as the legislative assembly may provide by law, shall not have jurisdiction of any matter in controversy when the title or boundaries of land may be in dispute, or where the debt or sum claimed shall exceed one hundred dollars; and said supreme and district court, respectively, shall possess chancery as well as common law jurisdiction, and authority for redress of all wrongs committed against the constitution or laws of the United States or of the territory, affecting persons or property.    *    *    The said supreme and district courts of said territory, and the respective judges thereof, shall and may grant writs of *mandamus* and *habeas corpus* in all cases authorized by law."

This act nowhere, in express words, defines or limits the extent of judicial power vested in probate courts, nor the nature of the judicial power vested in them. By

it, chancery and common law jurisdiction is expressly declared to be possessed by the supreme and district courts, and authority for the redress of all wrongs committed against the constitution or laws of the United States or of the territory, affecting persons and property, and the granting of writs of *mandamus* and *habeas corpus*, in all cases authorized by law. The question in this case is not whether the act in controversy is inconsistent with the clause of the Organic Act which confers upon the supreme court and district courts general jurisdiction in chancery as well as common law, or whether the legislature could evade or obstruct the exercise of the powers or general jurisdiction of those courts, by conferring precisely the same jurisdiction upon judges of probate. The jurisdiction, which the act in question authorizes the judge of probate to exercise, is not one that is inherent in any court, nor is it included in the jurisdiction of courts of general jurisdiction, by virtue of their possessing chancery, as well as common law jurisdiction. Its invalidity cannot be maintained on the grounds that it is an exercise of chancery or common law jurisdiction, which is exclusively conferred upon other courts, not that its exercise belongs, of right, to courts of general jurisdiction. Conceding that the power conferred by this act upon the probate judge is the power to exercise a judicial function, then two plain propositions present themselves in this case, viz: Can a probate judge receive other judicial powers than those relating to probate matters; and, if so, can judicial functions as to cases pending in the district court be granted to any person other than the duly appointed judge thereof? Under the provisions of the Organic Act, already recited, that the jurisdiction of the several courts therein provided for, "shall be as limited by law," and containing a provision,

"that the legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States," it could not successfully be maintained that the phrase "as limited by law" would have the effect to wholly exclude laws made by the legislature of the territory, or that such legislature did not have authority for conferring new rights or creating new remedies or establishing anomalous proceedings; or that they might not direct in what court or by what officer the powers to enforce such rights, remedies or proceedings, might be exercised. The power to issue attachments is not derived from the common law and never was a part of the jurisdiction exercised by the courts of chancery. It is purely of statutory authority and origin. (*Jaffray v. Jennings*, 101 Mich. 315; *Jaffray v. Wolf & Son*, 1 Okla. 312; Drake on Attachment, § 1 *et. seq.*).

This court has held that the power to regulate matters of divorce is a legislative one, and that the conferring of jurisdiction upon probate courts to grant divorces was not a wrongful exercise of the right granted by the Organic Act of the legislature of this territory to legislate upon "rightful subjects of legislation;" that it was not an infringement on any of the common law or equity jurisdiction of the supreme or district courts, and that there was no legal reason why the legislature might not enact and repeal laws relating to divorce. (*Irwin v. Irwin*, 3 Okla. 186). The effect of this decision is that the power being in the legislature to enact the law and create the right, it might determine what tribunal should be vested with the power to determine the right; provided, of course, that such tribunal was, by the Organic Act, a repository of judicial power.

The identical question involved herein was before the supreme court of Kansas in a number of cases, and the validity of acts identical with the one we are construing, was by that court upheld. The constitution of Kansas, art. 3, § 8, provides:

"There shall be a probate court in each county which shall be a court of record, and have such probate jurisdiction, and care of estates of deceased persons, minors, and persons of unsound minds as may be prescribed by law, and shall have jurisdiction in cases of *habeas corpus.*"

And art. 3, § 1, of said constitution, provides:

"The judicial power of the state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law."

These provisions are more definite, and certainly as restrictive, in determining the jurisdiction of probate courts, as the provisions of our Organic Act; yet in a case where the judge of probate made an order appointing a receiver in proceedings in aid of an execution, issued out of the district court, under a statute of that state authorizing such proceedings, the statutes authorizing judges of probate to make such orders, was held valid. (*Young v. Ledrick*, 14 Kan. 78).

An act providing that actual settlers upon school land, who had settled thereon, prior to a certain date, and who had made improvements thereon, might purchase the same at the appraised value thereof, and providing that the probate judge should have jurisdiction to hear and determine all questions necessary to be determined in order to ascertain whether the applicant was entitled to purchase said lands thereunder, was held to be valid. (*In re Johnson*, 12 Kan. 85). In that case, Judge Valentine said:

"It is claimed that said sections are unconstitutional, because the jurisdiction they attempt to confer upon the probate court, is not probate jurisdiction nor any jurisdiction authorized to be conferred upon probate courts by the constitution. There is no prohibition in the constitution, or elsewhere, against the exercise of such jurisdiction by the probate court. There is no inconsistency between the exercise of this jurisdiction and the performance of any other duty that may rightfully be conferred upon probate courts."

A statute, identical in language with ours, and from which ours appears to have been copied, has been in force in Kansas since 1883, and its validity maintained by the courts of that state. (*Buck v. Pennybaker*, 32 Kan. 467). In that case, in an action in the district court, an order of attachment was issued by the probate judge of Osage county. Afterwards, the defendants made a motion before the district judge of said county to dissolve the attachment, and the attachment was set aside and discharged. On appeal, the judgment below was affirmed on the ground that it did not appear from the record that the plaintiffs were entitled to the attachment on the grounds stated in their affidavit therefor; and in that case Chief Justice Horton, after quoting the statute, says:

"From these provisions of the statute it is clear that a probate judge can only grant an order of attachment when the district judge is absent from the county, upon the grounds mentioned in said § 230."

In *Young v. Ledrick*, 14 Kan. 78, *supra*, Brewer, judge, says:

"Can a probate judge be invested with judicial function as to cases pending in the district court? This really separates itself into two questions: Can a probate judge receive other judicial powers than those granted by the constitution to the probate court? And can judicial

functions, as to cases pending in the district court, be granted to any person other than the duly elected judge thereof? The first question is no longer an open one in this court, but has been already answered in the affirmative. (*In re Johnson*, 12 Kan. 102, and cases cited in the opinion). The second question must also be answered in the affirmative. The jurisdiction of the district court is not defined by the constitution. It is left to the legislature to prescribe its limits, and the manner of its exercise. While it may be that, under § 5, of art. 3, of the constitution, it is impossible for the legislature to provide for more than one judge of the district court, and while it may be that no legislation could be upheld which excluded such single judge from a supervisory control of all the proceedings of that court, yet, within this limit, we think it competent for the legislature to provide that other persons may exercise some judicial functions in cases pending therein."

In Nebraska, a statute which provides that an attachment may be granted by the court in which the action is brought, or by a judge thereof, or by the probate judge of the county, is held valid. (*Reed v. Bagley*, 24 Neb. 332). The case of *Ferris v. Higley*, 20 Wall. 375, is not in conflict with the views herein expressed. An act of the legislature of Utah territory provided, that:

"The several probate courts in their respective counties have power to exercise original jurisdiction, both civil and criminal, and as well in chancery as at common law, when not prohibited by legislative enactment, and they shall be governed in all respects by the same general rules and regulations as regards practice, as the district courts.

Mr. Justice Miller, speaking for the court, declared this act to be unconstitutional, but the broad distinction between that act and the one we are considering, is readily apparent. The judicial power which it sought to confer upon probate courts, was not that arising upon

a legislative cause of action or legislative remedial procedure, which the legislature might have entirely dispensed with, or might have conferred upon a mere ministerial officer, but that act attempted to confer upon the probate court full concurrent jurisdiction with the district court in all matters civil and criminal, as well in chancery as at common law. This, the court rightly held, they could not do, and while the learned judge, in the opinion, uses language from which it has been argued that the court intended to hold that in Utah, under an organic act identical with ours, the jurisdiction of probate courts was confined exclusively to matters of probate, and that their jurisdiction could not be enlarged by legislative enactment, we think his language, carefully read, will bear no such interpretation, but that the true interpretation thereof makes it to mean that congress, in conferring on supreme and district courts power of general jurisdiction in civil and criminal cases, specifically vesting in them common law and chancery jurisdiction, did not intend to leave it to the territorial legislature to confer a general jurisdiction upon probate courts or to vest them with the essential nature or jurisdiction of the supreme and district courts; or to authorize the legislature to modify, in essential particulars, the constitution or jurisdiction of those courts. But it was not intended in that case to hold that the legislative power was so restricted that they might not confer jurisdiction upon the probate courts or the judge thereof, in matters which did not impair the essential nature or jurisdiction of the supreme or district courts, or relate to common law or chancery jurisdiction; for in the opinion the learned judge says:

"We are not prepared to say that in deciding what law is meant in this phase, 'as limited by law,' we are wholly

to exclude laws made by the legislature of the territory. There may be cases when the legislature conferring new rights or new remedies or establishing anomalous rules of proceedings within their legislative power, may direct in what court they shall be had. Nor are we called on to deny that the functions and powers of the probate court may be more specifically defined by territorial statutes within the limits of the general idea of the nature of probate courts, or that certain duties, not strictly of that character, may be imposed upon them by the legislature."

We think the decision in this case, when rightly read and interpreted, sustains the principle of the authorities we have before cited, and that there is nothing therein which negatives the authority of the legislature to confer upon judges of probate the function sought to be conferred by the act, the validity of which we are considering.

In *Clayton v. Utah Territory*, 132 U. S., the court clearly defined what was intended to be decided in *Ferris v. Higley, supra*. In commenting upon that case it says:

"While there was no definition of the power of probate courts in the Organic Act, this court held that the essential nature of probate courts was not such as to justify the conclusion that they were intended to exercise such powers, (those of a general nature in civil and criminal cases), and especially it was held that it was not competent for the legislature to create other courts, or vest in other courts created by the Organic Act, powers which had already been vested in the supreme and district courts of the territory, and that therefore the statute of the territory, conferring common law and equity jurisdiction on the probate courts was void, as being in conflict with that provision of the act of congress."

Had the legislature, in the exercise of its authority, to legislate "on all rightful subjects of legislation," seen fit to confer upon judges of probate the power to issue

marriage licenses, to solemnize marriages, to organize corporations, to hear and determine contested election cases, to take depositions in any case in any court, or acts of a similar character, we would not be warranted in holding that the conferring of such powers would infringe upon the general jurisdiction of the supreme or district courts, or modify, in any essential particular, the constitution or jurisdiction of those courts; and such powers are not in their nature distinguishable from that which we are considering. We are clearly of the opinion that the legislature had the authority to provide that, in the absence from the county of the district judge, the probate judge might, upon a proper showing, make an order for the allowance of the writ of attachment in an action pending in the district court upon a debt not then due, and that § 4121, *supra*, is not unconstitutional.

The conclusion we have reached on this point necessitates our consideration of the other proposition, presented in defendant in error's special plea to the jurisdiction of the district court, viz., that said court had no jurisdiction, because no actual service had been had upon the defendant and because there had been no seizure of any of defendant's property, within the jurisdiction of the court, either by attachment or garnishment process. The record shows that there was no personal service on defendant. The answer of the garnishee showed that the property seized under the writ of attachment issued was in the possession of the garnishee and held by him under a vendor's lien; that by the terms of the contract creating such lien, title to the property was not to pass to the defendant, but was to remain in the garnishee until the terms of said contract had been complied with by the defendant; that defendant, at the time of the service of

the garnishment, had no interest whatever in said property, having transferred and assigned whatever interest he might have had by virtue of said contract to one Stoddard, in trust, and to be applied in the payment of certain of his debts, amounting to more than any interest which he might have had in said property.   Section 4085, Statutes of Oklahoma, 1893, provides:

"The answer of the garnishee shall in all cases be conclusive of the truth of the facts therein stated, unless the plaintiff shall, within twenty days, serve upon the garnishee a notice in writing that he elects to take issue on his answer; in which case the issue shall stand for trial as civil action, in which the affidavit on the part of the plaintiff shall be deemed the petition, and the garnishee's affidavit the answer thereto."

No notice having been given to the garnishee, by the plaintiff, of his intention to take issue on the garnishee's answer, in this cause filed, and no issue having been made thereon, under the foregoing provision of the statute, such answer must be taken as conclusive of the truth of all the facts stated therein, and such answer must be held as conclusively showing that the defendant did not own and had no interest in the property attached, and that no debts or liabilities were owing to him by such garnishees; and whatever interest he might have had in such property, had, before the garnishment, been lawfully assigned and conveyed to Stoddard.  Was there, then, any constructive service against the defendant in the cause by attachment or garnishment?  A garnishment to have any force or effect must reach and bind some property of the defendant or some debt due to him. Where property is sold and delivered, upon conditions that the title shall not vest in the vendee, unless the price agreed upon be paid within a specified time, the

vendee has no attachable interest in the property until the performance of the condition. (Drake on Attachment, § 246; *Buckmaster v. Smith*, 22 Vt. 203; *McFarland v. Farmer*, 42 N. H. 386; 19 Fed. Reporter, 760; *Lucas v. Birdsey*, 41 Conn. 357; *Bradshaw v. Warner*, 54 Ind. 58; Freeman on Judgments, § 124; *Strong v. Taylor*, 15 N. Y. [Hill], 325; *Saye v. Stutz*, 23 Ohio St. 1; *Cardinal v. Edwards*, 5 Nev. 40; *Harkness v. Russall*, 118 U. S. 671). Where completion of a contract is a condition precedent to payment the payor is not garnishable on his debt before the contract is completed. (*Carley v. Bertran, garnishee,* 34 N. W. 674). An answer showing that the debtor has assigned to a third party his interest in the property or in the debt due from the garnishee, and has notified the garnishee, sets up a state of facts showing that the garnishee is under no legal liability to the debtor. (*Bailey v. Union Pacific Ry. Co. garnishee,* 17 N. W. 567).

The contention of plaintiff in error that defendant in error's plea to the jurisdiction in the court below, was a general appearance of defendant in the action and gave jurisdiction, cannot be sustained. In order to constitute a general appearance, the defendant must file some plea, which, in effect, admits the jurisdiction of the court, or personally enter his general appearance. The plea in this cause did not go to the merits of plaintiff's cause of action or his right to sue thereon, but was simply an assertion that the defendant was not in court and that the court had no jurisdiction of his person or of his property, because there had been no service of process, either upon him personally or so as to affect any property owned by him.

We must, therefore, conclude that when the answer of

the garnishee was filed and the same was not traversed within the time provided for by law, such answer was conclusive as to the facts therein stated, namely, that no property, belonging to the defendant in error, or debts due to him, was reached by such garnishment.  And as no other property of the defendant was seized under the attachment, and there was no personal service upon the defendant, the court had acquired no jurisdiction and was without jurisdiction, to proceed further; that all the subsequent proceedings, orders and decrees therein, except the order dismissing said cause, were *coram non judice*, and void.  As the court below entered a final order, dismissing the cause for want of jurisdiction, although not upon grounds herein approved, the judgment below was for the right party, and said judgment is affirmed.

Bierer, J., having presided in the court below, and Keaton, J., having been of counsel, not sitting; all the other Justices concurring.