## SMITH VS MARKER ET AL.

Opinion delivered October 27, 1906.

(90 S. W. Rep. 611).

1. *Garnishment—Answer of .Garnishee, Effect Of.*

   The answer of the garnishee serves the double purpose of a pleading, and, as against him, of proof in the case. If it be uncontradicted it is prima facie evidence of the truth of the facts stated within it, as between the parties to the suit.

2. *Same—When Indebtedness is Contingent, not Competent.*

   When the indebtedness is contingent upon the happening of some future event, so that it is uncertain whether the contemplated garnishee will or will not be indebted to the principal defendant, a garnishment process will not be competent to secure such contingent sum for the use of the plaintiff, so long as the contingency lasts.

3. *Appeal—Jurisdiction On.*

   Although the only exceptions saved at the trial were to the overruling of motion of plaintiff for judgment and dismissal of garnishment and no motion for a new trial was made, the Appellate Court could determine that the garnishee was not liable for the debt.

Appeal from the United States Court for the Northern District of the Indian Territory; before Justice Joseph A. Gill, January 4, 1905.

Action by F. M. Smith against John D. Marker and others. From a judgment dismissing a garnishment plaintiff appeals. Affirmed.

On January 18, 1901, Henry Hayter, appellant's assignor, obtained judgment in the United States Court sitting at Vinita, I. T., against the appellee John D. Marker, for the sum of $481.-93, with interest. On July 29, 1904, the appellant, F. M. Smith filed in the suit his petition and affidavit for a writ of garnishment against the appellees W. E. Halsell and Oliver Bagby, alleging the judgment obtained by Hayter, that he was the beneficial owner thereof, and that the appellees Halsell and Bagby were indebted to John D. Marker in the sum of about $600, and had in their possession and under their control certain money, rights, credits, choses in action, and effects belonging to the defendant Marker, in about said sum, and prayed a writ of garnishment, which was allowed. The writ was issued and' duly served. The garnishees and the defendant filed answers to the garnishment. The answer of the garnishees is as follows: "Come now W. E. Halsell and Oliver Bagby, garnishees herein, and for answer and response state that there was nothing due from them or either of them to John D. Marker or John B. Marker, on the day said garnishment was served upon them, to wit, July 29, 1904. That they are not and will not be indebted to said John D. Marker in any sum whatever before the 14th day of March, 1905, and on that day they may be indebted to him in the sum of $625.00, provided the terms of a certain contract between them are complied with. That said sum represents the balance that may be due on the purchase price of what is represented by said Marker to be his allotment, exclusive of his homestead. That your garnishees, nor either of them, had on said July 29, 1904, or at any other time, any goods, chattels, moneys, credits, or other effects belonging to said John D. Marker or John B. Marker, except as above stated.

That they are advised that the money referred to is not subject to garnishment, and are exempt. Now, having fully answered, your garnishees pray to be discharged with their costs. That a copy of the contract and deed signed by said Marker and wife, Jane Marker, are hereto attached and made parts hereof, marked Exhibits A and B."

"Exhibit A.

"This contract of sale, made and entered into this 9th day of June, A. D. 1904, by and between John D. Marker, of Vinita, Indian Territory, party of the first part, and William E. Halsell and Oliver Bagby, parties of the second part, witnesseth:

"That this contract is entered into upon the following representations made by the party of the first part to the parties of the second part: (1) That the party of the first part is an adopted Cherokee and entitled to hold and have allotted to him lands in said Nation, being a member of the Delaware tribe by adoption.

"(2) That the party of the first part is one of the members of said tribe who is not of Indian blood, and is more than twenty-one years of age, and therefore entitled to sell his allottable share of the lands of the Cherokee Nation under the provisions of the act of Congress approved April 21, 1904.

"(3) That he has selected where he now lives land sufficient for his homestead.

"(4) That he is a registered Delaware, and under the treaty with the Cherokee Nation he is entitled to one hundred and sixty acres of land as his allottable share therein.

"(5) That he has not acquired, and has not the means to acquire, the remaining one hundred and thirty acres to which

he is entitled, and has not the means to cultivate the same if he had.

"(6)   That having provided himself a home he is desirous of converting the remainder of the land to which he is entitled into cash.

"And, whereas, William E. Halsell and Oliver Bagby, parties of the second part aforesaid, upon these representations, are willing to undertake to obtain peaceful possession of land amounting to one hundred and thirty acres, and equal in value to fourteen hundred dollars, provided the said party of the first part will make a good and valid conveyance of said property to them for that amount when so selected and allotted to him:

"Therefore, this agreement witnesses, for and in consideration of the mutual undertakings and representations made by the respective parties to each other, and the sum of twenty dollars cash in hand paid by the parties of the second part to the party of the first part, receipt of which is hereby acknowledged, it is agreed as follows:  The parties of the second part will, without expense to the party of the first part, secure for the latter the privilege of allotting one hundred and thirty acres of land at some place in the Cherokee Nation to be selected by the parties of the second part, said land to be of the reasonable market value of fourteen hundred dollars; the party of the first part agrees and binds himself, his heirs and assigns, that upon this being done he will select the same for his allotment, exclusive of his homestead.

"It is further agreed by and between the parties hereto that upon the same being selected as soon as it can be done the party of the first part, being authorized by law, will sell to the parties of the second part, and the parties of the second part

hereby agree and bind themselves, their heirs, executors, administrators and assigns, to buy of the party of the first part the land so selected and allotted by him, and pay him therefor the sum of fourteen hundred dollars, as follows: Seven hundred dollars after the party of the first part has selected the land for his allotment as aforesaid, and made and executed a good and lawful conveyance thereto to the parties of the second part; and the remaining seven hundred dollars on the expiration of the period when his filing on said land may be contested shall have expired, and title thereto perfected in him; and if these events shall fall together, then the fourteen hundred dollars shall be due and payable.

"As a further consideration for the party of the first part, and to aid him in securing his allottable share in the lands of the Cherokee Nation, in order that he may dispose of the same as authorized by law, the parties of the second part hereby agree to pay the actual and necessary expenses of the party of the first part in visiting the land and making his selection thereof at the land office as required by law."

"Exhibit B.

"Know All Men by These Presents: That we, John D. Marker and Jane Marker, his wife, for and in consideration of the sum of twelve hundred and one and 20–100 dollars to us paid by W. E. Halsell and Oliver Bagby, do hereby grant, bargain, sell and convey to the said W. E. Halsell and Oliver Bagby, and unto their heirs and assigns forever, the following lands, lying in the third recording district of the Indian Territory, to wit: Lot No. 3 and the northeast $\frac{1}{4}$ of the southwest $\frac{1}{4}$ of section 31, township 28 N., range 13 east, and the east $\frac{1}{2}$ of the southeast $\frac{1}{4}$ of the southwest $\frac{1}{4}$ of said section, and the north-

east 10.13 acres of lot No. 4, of said section, together with all improvements thereon.

"To have and to hold the same unto the said W. E. Halsell and Oliver Bagby and unto their heirs and assigns forever, with all appurtenances thereunto belonging.

"And we hereby covenant with the said W. E. Halsell and Oliver Bagby that we will forever warrant and defend the title to said lands against all lawful claims whatever.

"And I, Jane Marker, wife of the said John D. Marker, for and in consideration of the said sum of money, do hereby release and relinquish unto the said W. E. Halsell and Oliver Bagby all my right of dower and homestead in and to said lands.

"Witness our hands and seals, this 24th day of Sept., 1904."

The defendant John D. Marker filed the following answer: "John D. Marker, the defendant herein, comes and defends the application herein for a writ of garnishment and as grounds for defense says: (1) That no legal judgment has ever been rendered in this case, and no proper affidavit ever filed, and the garnishment was not authorized by law. (2) That under the provisions of the Cherokee treaty there was allotted to him, as a member of the Delaware tribe of Indians, 160 acres of land, and that he has contracted to sell the same to W. E. Halsell and Oliver Bagby, saving and excepting the homestead, and that they are to pay him for the same after the contest period has expired and upon the making of a deed conveying the same to them. That under the provisions of section 14 of the Cherokee treaty, this land, as well as the proceeds derived from their sale,

are exempt to him for the term of five (5) years from August 7, 1902, and under the provisions of said treaty a garnishment of the proceeds of the sale of such lands will not lie, and he says that he claims the proceeds of the sale of the lands as well as the lands themselves as exempt and not in any manner liable to be taken, incumbered or sold to secure or satisfy any debt or obligation prior to August 7, 1907, and he prays that this garnishment herein be dismissed."

On these pleadings and exhibits the appellant moved for judgment. The court overruled the motion and dismissed the garnishment proceedings. An appeal was taken by Smith.

*McCulloch & Probasco*, for appellant.

*W. H. Kornegay*, for appellees.

CLAYTON, J. (after stating the facts). An important question lying at the threshold of this case, and necessary to be decided, is: Was there any such indebtedness due, or to become due from the garnishees to the defendant John D. Marker, or any property or choses in action in their hands as was subject in this suit to the writ of garnishment?

The answer of the garnishee serves the double purpose of a pleading, and, as against him, of proof in the case. If it be uncontradicted it is prima facie evidence of the truth of the facts stated within it, as between the parties to the suit. Shinn Att. & Gar. vol. 2, 621. "In any event, it is taken as full proof until it is contradicted by other evidence; and such judgment may be rendered thereon as is proper in the statement of facts which it contains." Ib. 638.

In this case the answer and exhibits are all the proof there is, and, being undisputed, must be taken as true. And

the motion of the appellant, Smith, for judgment on the answer of the garnishees and exhibits is also an admission of the truth of the statement of facts contained in them. And the facts set up therein, in effect, are that John D. Marker, the judgment debtor, was an adopted citizen of the Cherokee Nation; that being desirous of obtaining his allotment of his share of the Cherokee lands in excess of his homestead, which he had already selected, and being a poor man without sufficient means for that purpose, on the 9th day of June, 1904, he entered into a contract with Halsell and Bagby, the garnishees, that they were to advance the necessary means, and without expense to Marker, secure for him "the privilege of allotting the land," 130 acres, at some place in the Cherokee Nation to be selected by them, the land to be of the reasonable market value of $1400; that this being done, Marker obligated himself to select the same for his allotment, exclusive of his homestead, and Marker, being desirous of converting this land into cash, agreed to sell the same to the garnishees as soon as it could be done, for $1400. Seven hundred dollars was to be paid after the land was selected and a deed conveying the same to the garnishees should have been executed by Marker, and the balance of the purchase money was to be paid "on the expiration of the period when his filing on the said land may be contested shall have expired" and title thereto perfected in him (Marker). About three months after the execution of this contract, on September 24, 1904, Marker and wife executed their warranty deed and relinquishment of dower, conveying to the garnishees the tract of land described, and presumably receiving the $700, which, according to the contract, was to be paid at that time, leaving a balance of the purchase price due of $700, or, as stated in garnishees' answer, of $625; the difference not being accounted for. It is this balance that is garnished. This sum, however, was not to be paid until the period of contest should have expired, and only

in the event that title should be vested in Marker. Title could not be thus vested until the expiration of the period of contest, which is fixed by the answer as being March 14, 1905. The judgment dismissing the garnishment was entered on January 4, 1905. And so it will be seen that the contract, the deed, the issuance of the writ of garnishment, its service, the answer of the garnishees, and the judgment of the court were all before the period of contest had ended, and, therefore, even as late as the judgment in the case, it could not be known whether or not the assumed debt sought to be garnished would ever be a debt at all. It depended upon a contingency that might defeat it, and therefore the debt, if it can be so called, was not absolute.

"When the indebtedness is contingent upon the happening of some future event, so that it is uncertain whether the contemplated garnishee will or will not be indebted to the principal defendant, a garnishment process will not be competent to secure such contingent sum for the use of the plaintiff, so long as the contingency lasts." Shinn on Att. & Gar. § 481. See, also, the numerous cases cited by the author in footnote 1 to the said section. It is true that under our statute (Mansf. Dig. § 3412 (Ind. Ter. Ann. St. 1899, § 2346) a debt which is to become due is made liable to the process of garnishment, but it must be an absolute, existing debt. "Some statutes require that the debt must be due and payable at the present time, in order that it may be made the subject of a proceeding in garnishment, while others permit a debt which is to become due in the future to be so made liable; but it is a universal requirement that it must be an absolute, existing debt, even though the period of its payment may not yet have arrived." Shinn, Att. & Gar. § 480, and authorities cited in footnote 5; Drake on Att. (6th Ed.) § 28, and authorities cited. Testing

this case by the unquestionable rule of the law, the debt was not absolute. It depended upon the contingency that the judgment debtor should be vested with title after the period of contest had ended. That that contingency did not happen before judgment in this case we know certainly. Whether it has happened since, or ever will, we are not informed.

The point is made that, as there were no exceptions saved at the trial on this ground, the question is not before us for our consideration. There were two exceptions saved at the trial: First, that the court erred in overruling plaintiff's motion for judgment; second, to the action of the court in dismissing the writ of garnishment. No intimation is given us by the record as to the grounds upon which the court acted in overruling the motion and in dismissing the garnishment. There was no motion for new trial or bill of exceptions filed. One of the two assignments of error is that "The court erred in dismissing said order of garnishment and ruling that the said funds garnished were not subject to garnishment proceedings, and not allowing Smith judgment against the garnishees on their said answer." We hold, in passing on this assignment, that the court did not err either in dismissing the garnishment, or in its rulings that the debt sought to be garnished was not subject to garnishment. And this is conclusive of the case.

Entertaining this view of the case, we do not deem it necessary to pass upon the other question raised.

The judgment of the court below is affirmed.

TOWNSEND, J., concurs. RAYMOND, C. J., not participating.