## JACOBS v. COLCORD.

No. 18330.   Opinion Filed April 23, 1929.

Estelle Balfour Bennett, for plaintiff in error.

Keaton, Wells & Johnston, for defendant in error.

TEEHEE, C.   This cause is ancillary to a suit brought by the plaintiff in error, G. W. Jacobs, hereinafter called plaintiff, against the North American Oil Company, as defendant, to recover on an account of $2,339.50, in which plaintiff garnisheed an account of the defendant carried with the Liberty National Bank of Oklahoma City, in the amount of $1,579.25, and in which garnishment proceedings defendant in error C. F. Colcord, hereinafter referred to an intervener, intervened, alleging a superior equitable lien to the fund held by the bank.

In his plea intervener alleged, in substance, that on or about May 29, 1923, he loaned to the defendant North American Oil Company $65,000, and as security therefor defendant assigned to him a certain productive oil and gas lease in the Smackover oil field in Arkansas, against which there was then subsisting a vendor's lien of $53,666.33, payable out of an undivided part of the oil production; that the loan was for the express purpose of liquidating certain other lien claims against the particular leasehold incurred by the defendant in the operation thereof, then estimated to be in the amount of the loan; that pursuant thereto intervener directly paid a note of defendant in the sum of $15,000, and deposited with the Liberty National Bank of Oklahoma City the remainder, $50,000, under the designation of "Special Smackover Account,

North American Oil Company," with the bank authorized to honor checks drawn on the account signed by one L. D. Callahan, who was neither an officer nor an employee of the defendant company, and employed by the intervener as his agent; that pursuant to said loan agreement, claims against said leasehold were paid by said Callahan out of the deposit made as aforesaid, so that there remained as a balance in said account at the time of the filing of this cause the sum of $1,579.25; that in the course of the adjustment of liens and claims against said leasehold, it developed that the amount represented by the defendant oil company at the time of the transaction to be due on the vendor's lien, instead of being the sum of $53,666.33, was, in fact, $57,598.85, by reason whereof there was paid out of the oil production $3,932.52 more than was then represented to be due, and which payment intervener was entitled to receive and would have otherwise received the same had such indebtedness been in the amount as represented by the defendant oil company at the time of the original transaction, and thus he did not receive all the property contracted for; that the fund deposited as aforesaid in the bank was a trust fund for the purpose expressed in the loan agreement, namely, to liquidate claims against the leasehold assigned; that the same did not become the property of the defendant oil company, but was carried in its name under the special designation for the purpose of identification; that the same was never subject to check by the defendant oil company or any of its officers; that the defendant oil company acquired no right in equity in and to said fund other than for the purpose of paying the claims aforesaid, and that as intervener received less than the property assigned to him in the amount of $3,932.52, thus, in effect, paying in that sum liens and claims in excess of the amount represented by defendant oil company to be then due and subsisting, he is entitled in justice and equity to have said balance remaining in the bank applied in partial liquidation of said excess sum, and by reason thereof his right thereto is superior to that acquired by plaintiff by said garnishment proceedings. By reply plaintiff denied all allegations contained in the interplea.

It was stipulated by and between the plaintiff and the intervener that, at the time of the loan transaction between the defendant oil company and intervener, there remained due, as a part of the purchase price of the leasehold assigned to intervener, the sum of $57,598.85, payable out of one-half of the oil production; that thereafter said sum was fully liquidated in said manner and proper acknowledgment of payment executed and recorded, which instrument of acknowledgment would be used as evidence without further authentication.

The cause was tried to the court without the intervention of a jury. The defendant oil company being in default, judgment in the amount sued for was thereupon rendered for plaintiff, and the court found the issues arising upon the garnishment proceedings for the intervener, and decreed that intervener "has a first and prior lien and equitable interest upon the money sought to be garnisheed in the hands of the Liberty National Bank, and that said fund is not subject to garnishment at the instance of this plaintiff, G. W. Jacobs, until the prior claim of C. F. Colcord thereon is first fully satisfied and paid, and the court adjudges that the claim and rights of said C. F. Colcord in said fund are in excess of the principal amount thereof," and further that said garnishment proceedings be released and discharged.

For reversal of the judgment, plaintiff submits two propositions, to wit:

"The money garnished was without question the assets of the North American Oil Company, and subject to garnishment under the findings of facts included in the judgment of the trial court.

"The intervener, C. F. Colcord, failed to establish an equitable right or lien to the funds garnished, the facts, on the contrary, showing that the transactions upon which he relies are fraudulent in fact and in law, and cannot be the basis of an affirmative right in the intervener, nor entitle him to a lien on the money garnished by the plaintiff."

These propositions are properly resolvable into the single question of whether or not the action of the trial court in awarding judgment for the intervener is clearly sustained by the evidence, and will be here so treated.

The salient facts established by the evidence requiring our notice may best be shown by a brief narrative of the history of the transaction out of which the fund in controversy originated. This substantially is as follows:

The defendant oil company purchased the leasehold mentioned from the original owners, Morris & Marr, on November 23, 1922, for a certain cash consideration, and the sum of $75,000 payable out of one-half of the oil production. Finding itself confronted

with threatened lien suits against the leasehold based on accounts incurred in the operation thereof, the defendant oil company, of which intervener, Colcord, was an officer and director, on May 26, 1923, negotiated from him a loan of $65,000, the fund to be used in freeing the leasehold of such lien claims, and as security for the loan thus made, the defendant oil company assigned all of its right, title and interest in said leasehold to intervener. These claims, as then represented to be subsisting, aggregated $65,000, the amount of the loan, a list whereof was then furnished. The loan was made by intervener under the distinct understanding that the loan would be used for the express purpose of liquidating such claims, and to that end he paid direct a note of the defendant oil company for $15,000 and deposited with the Liberty National Bank, the garnishee, $50,000 as a special fund and so designated under the title "Smackover Special Account, American Oil Company," and arranged with the bank that checks thereagainst were to be honored when drawn by his agent, L. D. Callahan. This arrangement was confirmed by the defendant oil company by letter. The list of the claims then furnished fell short of the amount loaned by $232.32, which was paid to the intervener by the defendant company as a credit on said loan.

At the time of the loan transaction, defendant oil company represented that it owed as a part of the purchase price on the lease the sum of $53,666.33. This item later developed to be $57,598.85, thus making the difference between the amount represented to be due to the assignor of the defendant oil company and the amount actually owing $3,932.52, which excess was paid out of the one-half of the oil production. It developed, also, that there were other items of indebtedness existing against the leasehold in excess of the list furnished by $8,875.27, so that there was a total of indebtedness against the leasehold in excess of the amount represented at the time of the loan transaction by $12,807.79, the next preceding stated item being at the time of the trial unpaid.

Plaintiff's theory is that the fund involved is the absolute property of the defendant North American Oil Company, and thus subject to garnishment; that is to say, that the garnishee bank was indebted to plaintiff's debtor, the defendant oil company, in the amount of the controverted fund.

In support of his theory plaintiff contends that the transaction between the defendant oil company and the intervener originating the fund in controversy, was of that nature as to bring it within the rule repeatedly announced in many jurisdictions and as laid down by this court in Bentley v. Zelma Oil Co., 76 Okla. 116, 184 Pac. 131, to wit:

"Directors and officers of a corporation, having the management of its corporate affairs, occupy the position of trustees of the welfare of the company, and guardians of the interests of the stockholders, and will not be permitted by a court of equity to violate such trust, by selling or purchasing the corporate property to their own personal advantage and to the detriment of their cestui que trust.

"The law is averse to sale of corporate property to directors and officers intrusted with the making of such sales, and courts of equity look with suspicion upon them, and will sustain them only upon clear proof of good faith and adequacy of consideration."

And that, applying the rule to the facts therein, the transaction was fraudulent and void, and could not be relied on by intervener as against plaintiff.

That the principle of the rule thus relied on by plaintiff is to be applied to the loan transaction here involved cannot be gainsaid. It has found application elsewhere. Williams v. Jones, 23 Mo. App. 132; 3 Cook on Corp. (7th Ed.) 2314, section 692. In the Williams Case, the rule is stated as follows:

"A stockholder and director may contract with, and make loans to, the corporation, of which he is a constituent member, and the courts are open to him for the enforcement of such contracts as a stranger to the corporation. But on account of his relation to the corporate body, where the rights of third parties are concerned, courts of equity will narrowly scan and closely scrutinize such transactions, and cast upon such creditors the onus of proving the bona fides of the debt. Such stockholder and director may also loan money to, and take security from, an embarrassed corporation, which will be upheld both in courts of law and equity."

The author in the treatise cited uses this language:

"A mortgage by an insolvent corporation to a director may be upheld to the extent that the director, at the time of the mortgage, advanced funds to pay its debts, but not as to antecedent debts to the director."

The proof clearly showed that the loan for which the assignment was given as security was for the express purpose of the payment of lien claims owing by the defendant oil company to third parties, and thus the assignment was not made to secure any antecedent debt owing by the company

to the intervener. And there being a want of evidence to establish fraud, the court necessarily found the transaction to be a valid one, and under the terms of the instrument of security, there would thus appear to be a fund that was the absolute property of the defendant oil company, and that upon deposit thereof there was created the relation of debtor and creditor between the bank and the company as by plaintiff contended.

However, intervener contends that the fund was impressed with a trust, and was so received by the defendant oil company, and that as the trust was not fully discharged at the time of suit and trial of the issues, the defendant oil company did not have that title thereto sufficient to sustain plaintiff's garnishment thereof as against intervener's interest therein by virtue of the manner in which the fund was created. In this intervener is supported by the record in that the purpose of the loan fund and the manner of its deposit and disbursement were confirmed by letter of the defendant oil company, and that all of the claims were not in fact fully liquidated, and that there was in effect a partial failure of the consideration in that the security was less in value in the amount of the difference between the represented amount of the vendor's lien and the actual amount thereof.

Under the concurrent agreement of the parties to the transaction, consisting of the letter of advice of the manner in which intervener deposited the fund with the garnishee bank and assent thereto by the defendant oil company, it may be said that there was an appropriation and dedication of the loan fund for the specific purpose designated in such agreement, namely, the payment of claims against the property assigned as security. In Carson v. Harrod, 91 Okla. 62, 215 Pac. 129, it is said:

"Where a person receives money from another under an agreement to pay out such money for the principal for some particular purpose, a trust relation arises between the parties to the transaction."

Under that principle the trial court was not without justification in holding, in effect, that the controverted fund was a trust fund, and that the garnishee bank was constituted a trustee thereof.

As an assurance against perfidy in this trust relation, the defendant oil company restricted the use of the fund to checks drawn thereon by intervener's agent, whom it clothed with its own agency rather than that disbursement should be made by its general corporate fiscal agent through whom corporate funds usually are expended. The question therefore arises, which is the controlling one, as to the right of the defendant oil company to call upon the garnishee bank for the fund, for it is well settled that:

"A garnishment proceeding is no more than a substitution of the plaintiff for the defendant debtor in the enforcement of any liability against the garnishee, and therefore the plaintiff can acquire no greater rights against the garnishee than the debtor himself possessed or could enforce." Rock Island Lumber & Mfg. Co. v. Equitable Trust & Investment Co., 54 Kan. 124, 37 Pac. 983; 2 Shinn on Att. & Gar., sections 531 and 579; Dolf v. Cross, 153 Iowa, 289, 133 N. W. 669.

In other words, was there an indebtedness due by the garnishee bank to the defendant oil company upon which a judgment for plaintiff against the garnishee may have effectively operated under the facts established by the evidence?

In West Florida Grocery Co. v. Teutonia Ins. Co. (Fla.) 77 So. 209, it was said:

"Before a writ of garnishment can be effective, there must be an 'indebtedness due,' at the time of the service of the writ, or at the time he makes his answer, or at any time between such periods, or which may become due absolutely by the lapse of time only. This excludes an indebtedness that may never become due according to circumstances yet to occur, or which is not determinable by a fixed and certain method of calculation. If there is anything contingent or to be done by a person before the liability of another becomes fixed, there is not such an 'indebtedness due' as contemplated by the statute to which a writ of garnishment can apply."

In Smith v. Marker, 6 Ind. Ter. 213, 90 S. W. 611, the court used this language:

" 'When the indebtedness is contingent upon the happening of some future event, so that it is uncertain whether the contemplated garnishee will or will not be indebted to the principal defendant, a garnishment process will not be competent to secure such contingent sum for the use of the plaintiff, so long as the contingency lasts.' Shinn on Att. & Gar. sec. 481. See, also, the numerous cases cited by the author in footnote 1 to the said section. It is true that under our statute (Mansf. Dig. sec. 3412 Ind. T. Ann. St. 1899, sec. 23-46) a debt which is to become due is made liable to the process of garnishment, but it must be an absolute, existing debt. 'Some statutes require that the debt must be due and payable at the present time, in order that it may be made the subject of a proceeding in garnishment, while others permit a debt which is to become due in the future to be

so made liable; but it is a universal requirement that it must be an absolute, existing debt, even though the period of its payment may not yet have arrived.' Shinn, Att. & Gar. sec. 480, and authorities cited in footnote 5; Drake on Att. (6th Ed.) sec. 28, and authorities cited. Testing this case by the unquestionable rule of the law, the debt was not absolute."

In Central Loan & Trust Co. v. Campbell Commission Co., 5 Okla. 396, 49 Pac. 48, we find this pertinent observation:

"A garnishment to have any force or effect must reach and bind some property of the defendant or some debt due to him."

While that case was reversed in 173 U. S. 84, 43 L. Ed. 623, the rule thus expressed was undisturbed, as the reversal was upon other grounds. These cases but declare the rule which in this jurisdiction is statutory, as by section 368, C. O. S. 1921, it is in part provided:

"No judgment shall be rendered upon a liability of the garnishee arising: * * * By reason of any money or other thing owing from him to the defendant. unless before judgment against the defendant it shall become due absolutely and without depending on any future emergency."

Under the record, as it is here presented, the defendant oil company was not in a position to assert the absolute relationship of debtor and creditor between the garnishee bank and itself for that relationship could not arise until the purposes of the special deposit were fully completed, and this was not the case.

In Rock Island Lumber & Mfg. Co. v. Equitable Trust & Investment Co., supra, which involved the relative rights of parties to a loan transaction entered into under circumstances similar to those in the case at bar, the court made this observation which is here pertinent, to wit:

"According to the testimony of the prevailing parties, the money was loaned and set aside for a specific purpose. It was a trust fund devoted to the erection of a building upon the mortgaged property, under an agreement between all the parties concerned. The trust company cautiously provided that the money could only be used for that purpose. and that it should only be paid out as the work progressed, and further, that a portion of the same should be reserved until the building was completed, as a guaranty against any mistakes or losses. To make it more secure, Aaron and wife by assignment transferred the fund to Lynch, the superintendent of construction. The garnishment could not affect or annul the contract made when the loan was obtained. nor divert the fund from the well-defined purpose to which it was to be devoted. It is well settled that the plaintiff could not acquire any greater rights against the garnishees than the defendant himself possessed or could enforce. The agreements between the garnishees and Aaron being valid, he could not have reclaimed the money, or any portion of the same, until the agreements or trusts were carried out, and the plaintiff had no greater rights or other recourse against the garnishees than might have been asserted by Aaron. Any residue remaining after the execution of the trust would belong to Aaron, and might be subjected to the payment of his debt; but until the trust was carried out and the building completed. it could not be determined that any portion of the fund would be unexpended. Until that time the fund was not subject to garnishment, nor could the investment company or Lynch be charged as garnishees. (Drake, Att., secs. 454b, 517; Waples, Att. 199; Wade, Att., secs. 449, 473; 8 Am. & Eng. Encyc. of Law, 1179, 1194.)"

As the general finding of the trial court cannot be said to be against the clear weight of the evidence. we are of the opinion that under the principles of the foregoing cases the judgment pronounced thereon was not erroneous. This conclusion renders it unnecessary to consider other points of plaintiff's argument in relation to corporate management subsequent to the loan transaction, as they in no wise affect the subject-matter of this controversy.

The judgment of the district court is therefore affirmed.

REID, LEACH, FOSTER, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.