# CENTRAL LOAN & TRUST COMPANY *v.* CAMPBELL COMMISSION COMPANY.

## ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 145. Argued and submitted January 17, 1899. — Decided February 20, 1899.

The plaintiff in error, a Texas corporation, commenced an action, in a court of Oklahoma, against the defendant in error, a Missouri corporation, and caused a writ of attachment to be issued and levied upon five thousand head of cattle, claimed to be the property of the Missouri corporation. After such levy, service was made upon one Pierce as garnishee of the Missouri corporation. Pierce answered, denying that he was indebted to or held property of that company, and further set up an agreement under the provisions of which he had shipped to the pastures of that company a large number of cattle, the ownership to remain in him until full payment for the cattle. The cattle levied upon were of this number. He also set up a notice from one Stoddard of an assignment to him of the contract by the Missouri company. He further set up that he was entitled to the possession of the cattle, and asked that they should be returned to him with damages. With the consent of both sides Pierce was appointed receiver of the cattle, and then service was made upon the Missouri corporation by publication, had in compliance with requirements of law. Stoddard then filed an interplea, setting up rights of other parties. This was demurred to, but no action was had on the demurrer. The receiver sold the cattle, paid himself in full and reported to the court that he had a balance in his hands, subject to its order. Then the Missouri company filed pleas to the jurisdiction of the court, and other pleas were filed, setting up claims to the balance in the receiver's hands. The Missouri company also set up that Pierce, by becoming receiver, had abandoned his claim to the ownership of the cattle. The trial court held that the territorial act, authorizing the probate judge, as to debts not yet due, to order an attachment in the absence of the district judge, was unconstitutional and void, and ordered the action dismissed. The Supreme Court of the Territory held that the court below was wrong in this respect, but affirmed its judgment on the ground that an actual levy was necessary in order to give the court jurisdiction, and there had been none. The case being brought here, the Missouri corporation set up that this court was without jurisdiction, because the intervenors in the trial court had not been made parties to the appeal. *Held:*

(1) That it was not necessary to make the intervenors parties;

(2) That property of the Missouri company had been levied on under

the writ of attachment, and that the decision of the Supreme Court of the Territory to the contrary was wrong;

(3) That the Oklahoma statute, requiring an affidavit in its support, as a prerequisite to the issuance of a writ of attachment, does not involve the discharge of a judicial function, but is the performance of a ministerial duty;

(4) That the court acquired jurisdiction of the defendant corporation by constructive service, by foreign attachment, without its consent;

(5) That the territorial statute, authorizing the issue of a writ of attachment against the property of a non-resident defendant, is not repugnant to the Fourteenth Amendment to the Constitution.

THIS action was commenced on July 2, 1895, in the district court of Noble County, Oklahoma, by the Central Loan and Trust Company, a Texas corporation, against the Campbell Commission Company, a Missouri corporation, to recover upon certain promissory notes not then due. Upon affidavit a writ of attachment issued, and was levied upon five thousand head of cattle, as the property of the Campbell Company. After such levy, a summons in garnishment was served upon one A. H. Pierce, who answered that he was not indebted to and held no property owned by or in which the Campbell Company had an interest. As "a further and special answer" Pierce set out a written agreement entered into between himself and the Campbell Company for the sale and shipment by him, to that company, of a specified number of cattle. This agreement provided that Pierce was to deliver at Pierce Station, Texas, a designated number of cattle, which the company agreed to ship to its pastures in the Indian Territory "at its own risk and pay all freight and other expenses," the expenses to embrace the wages of a man to be put by Pierce with the cattle, "to represent his interest in said cattle." It was recited in the contract that five thousand dollars had been paid at the signing of the agreement "as part of the purchase price;" and the company further agreed to pay to Pierce interest at the rate of ten per cent per annum on all unpaid amounts from the date of shipment of the cattle until full and final payment in accordance with the contract. The company also agreed to ship the cattle to market during the summer or fall of 1895,

for account of Pierce, and to apply the proceeds of sale to payment for the cattle until fully paid for at the rate of fifteen dollars per head; and it was also stipulated that title and ownership of the cattle should be and remain in Pierce until such payment.

In said "further and special answer" it was also alleged that the cattle, upon which the writ of attachment had been levied, formed part of the number covered by the contract above referred to, and had been shipped by Pierce to the pastures of the Campbell Company, but that they had never ceased to continue in the possession of Pierce; it being further claimed that the cattle were subject to a charge for unpaid purchase money, expenses for their care and keeping, etc. The answer further stated that notice had been received by Pierce from one T. A. Stoddard, trustee, that an assignment had been made of said contract to him by the Campbell Company, and a copy of the alleged assignment was annexed. It purported to "sell and assign all the title and interest in and to" the contract between Pierce and the Campbell Con pany, any profit which might be derived by Stoddard from carrying the contract into final execution, to be applied by him as trustee to the payment, *pro rata*, of certain described notes. The garnishee also declared that on July 12, 1895, receivers had been appointed of the assets of the Campbell Company, and the answer concluded with asking that Pierce might be discharged as garnishee.

With the answer to the garnishment there was also filed by Pierce what was termed an interplea. It was therein, in substance, averred that the cattle which had been levied upon were wrongfully detained from Pierce; that he was entitled to their immediate possession; and he prayed that on the hearing of the interplea judgment might be awarded for the return of the cattle, with damages for their alleged wrongful seizure and detention. A motion was also filed, on behalf of Pierce, "as garnishee and interpleader," to discharge the attachment, substantially on the ground that the cattle belonged to Pierce, and that the latter was not indebted to the Campbell Company, and held none of its property.

On the date when this motion came on for hearing the plaintiff filed an application for the appointment of Pierce as receiver, "to take charge of the property attached in this action and sell the same in accordance with a certain written contract" attached as an exhibit, being the contract referred to in the answer of Pierce to the garnishment. The service of the writ of attachment was averred, and it was stated that the cattle which had been levied upon had been "under the care, custody and control of the sheriff of Noble County since the third day of July, 1895, when said attachment was levied;" and it was further averred: "That said A. H. Pierce claims no interest in said property or this suit except as set forth in said contract hereto attached, and is entirely friendly to all parties concerned in said action, and, as plaintiff and its attorneys are informed and believe, the appointment of said A. H. Pierce as receiver herein would be entirely satisfactory to the defendant and all other parties in said action."

The pecuniary responsibility of Pierce and his large experience as a dealer and raiser and shipper of cattle, and other circumstances, were set forth as warranting his appointment without bond to sell the cattle in the usual commercial way, instead of at public sale, and the application concluded as follows:

"That it would be to the interest of all parties concerned to have A. H. Pierce appointed receiver to take charge of said steers and sell the same to the best advantage, accounting to the court for all sales, and, after satisfying his claim under said contract, hold the money remaining in his hands subject to the final order of this court.

"That said A. H. Pierce has already shipped from five thousand head of steers so seized in attachment about three hundred and sixty head and sold the same in market, and now holds the proceeds thereof, which should be accounted for by said A. H. Pierce along with other accounts of shipments."

An order appointing the receiver was thereupon made, the consent of the attorneys both of Pierce and the plaintiff being noted thereon, and Pierce qualified as receiver.

A summons which had been issued having been returned

"defendant not found," publication was had in compliance with the legal requirements.

Subsequently Stoddard, trustee, filed an interplea. Therein it was averred that the contract between Pierce and the Campbell Company had been made by that company for account of a firm styled George W. Miller & Son, and had been entered into in the name of the Campbell Company in order to secure that company for advances which had been made by it to Miller & Son; that under an assignment by the Campbell Company to Stoddard he was entitled to the proceeds of the sale of the cattle in the hands of the receiver after the claim of Pierce had been paid. Plaintiff demurred to this interplea on November 5, 1895, but no action was ever had thereon.

A report was filed by the receiver, showing that he had sold the cattle, and from the proceeds had satisfied in full his claim under the contract of September, 1894, and that a balance was in his hands subject to the order of the court. Thereafter the Campbell Company filed a "plea to the jurisdiction," and subsequently filed an amended plea, which stated seven grounds why the court was without jurisdiction, all of which will be hereafter referred to.

After this George W. Miller and J. C. Miller filed an interplea in the action, claiming that they were the real contractors with Pierce in the agreement of September 8, 1894, and averred their ownership of the cattle, and that if the contract had been assigned to Stoddard, it was done without their authority, and was void. It was prayed that the proceeds of the cattle be paid to them after the payment to Pierce of the amount of his claim. No issue was taken on this interplea.

On the same date that the Miller interplea was filed the plaintiff filed an answer to the interplea of A. H. Pierce, averring among other things that Pierce, as a result of the receivership proceedings, had waived and abandoned all his claim in and to the ownership of the cattle levied on under the attachment. On December 16, 1895, the plea of the Campbell Company to the jurisdiction was heard, upon the

record, over objection and exception by plaintiff. The court overruled all the grounds assigned in the plea except the second, which asserted that there was a want of power in the probate judge to issue an order for attachment. As to such ground it held that the act of the territorial assembly of Oklahoma, conferring power upon the probate judge, as to debts not yet due, to order an attachment in the absence of the district judge from the county, was unconstitutional and void. It thereupon concluded that all the proceedings were void, the attachment was quashed, and the suit dismissed for want of jurisdiction, without prejudice to the Campbell Company. The Campbell Company excepted to the action of the court in overruling all the grounds of its plea to the jurisdiction but that referring to the power of the probate judge, and the plaintiff excepted to the action of the court holding that there was a want of power in the probate judge.

Error was prosecuted to the Supreme Court of the Territory. That court, whilst concluding that the lower court was wrong in deciding that the probate judge was without authority to allow the attachment, yet affirmed the judgment below on the ground that as an actual levy on the property of the defendant Campbell Company was necessary to give the lower court jurisdiction to determine the cause, and as there had been in law no such levy, therefore the court below was without jurisdiction, and had correctly dismissed the suit. The reasoning of the court, in effect, sustained the third ground of the motion to quash the attachment made by the Campbell Company. A petition for rehearing having been overruled, the cause was brought to this court.

*Mr. William D. Williams,* for plaintiff in error and appellant, submitted on his brief.

*Mr. John W. Shartel* for defendant in error and appellee.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

On the threshold it is necessary to dispose of a suggestion of want of jurisdiction made by the appellee. It is based on the proposition that as the intervenors in the trial court are not made parties to this appeal, we are without jurisdiction, since the judgment to be rendered may materially prejudice their rights. But the intervenors did not except to the action of the trial court in vacating the attachment and dismissing the action. They were not made parties to the proceedings in error prosecuted from the judgment of the trial court to the Supreme Court of the Territory. In that court the cause was determined without any suggestion, so far as the record discloses, that the questions arising on the record could not be decided in the absence of the intervenors, and the Supreme Court of the Territory manifestly assumed that the intervenors were not essential parties to a determination of the controversy before it, since it passed on the case as presented without their presence. If their absence was treated by the parties to the proceedings in the Supreme Court of the Territory as not affecting the right to a review of the judgment of the trial court, there can be no reason why we should now hold that the presence of such intervenors is necessary on this appeal, which has solely for its object a review of the judgment rendered by the Supreme Court of the Territory. Considering the facts just stated, and the further fact that it is obvious that the rights of the intervenors cannot be prejudiced by a review of the action of the Supreme Court of the Territory in dismissing the cause for want of jurisdiction, the motion to dismiss is overruled.

The third ground stated in the plea of the defendant, the Campbell Company, to the jurisdiction of the court, was the one which the Supreme Court of the Territory found to be well taken, and upon which it based its affirmance of the judgment quashing the attachment and dismissing the action for want of jurisdiction. The reasoning by which the court reached its conclusion was in substance as follows:

The garnishee Pierce answered that he had nothing subject to garnishment. After doing this, he further answered, setting out an alleged contract between himself and the de-

fendant, by which he had agreed to sell and ship to the pastures of the defendant a certain number of cattle, which agreement had been carried into execution, the cattle seized under the attachment being a portion of those shipped in carrying out the contract. The answer then stated that although the cattle had been thus shipped, by the terms of the contract, the right to their possession remained in the garnishee Pierce, to whom there was a large amount due under the contract for purchase money and expenses. The answer further stated that the garnishee had been notified of an assignment by the defendant of its rights under the contract, the date of this assignment as given being prior in time to the levy of the attachment. Considering that there had been no traverse by the plaintiff to the answer of the garnishee, within twenty days, as required by the Oklahoma statute, the court concluded that all the facts and averments and the inferences deducible therefrom, stated in the answer, were to be taken as true, not only as between the garnishee and the plaintiff, but also between the plaintiff and the defendant, in determining whether property of the defendant had been levied upon, under the attachment. Upon this assumption, finding that the answer of the garnishee established that no property of the defendant had been levied upon under the attachment, it thereupon dissolved the attachment and dismissed the suit. But this reasoning was fallacious, since it assumed that because the failure to traverse the answer of the garnishee was conclusive of his non-liability, in the garnishment proceedings, it was therefore equally so, as between the plaintiff and defendant, in determining whether the property which had been levied upon under the attachment belonged to the defendant. But the two considerations, the liability of the garnishee under the proceedings in garnishment and the validity of the levy previously made under the attachment, were distinct and different issues. The section of the Oklahoma statute to which the court referred (Oklahoma Stat. 1893, sec. 4085) provides that the answer of the garnishee " shall in all cases be conclusive of the truth of the facts therein stated, unless the plaintiff shall within twenty days serve upon the garnishee a notice

in writing that he elects to take issue on his answer." It, however, can in reason be construed only as importing that the facts stated in the answer, unless traversed, should be conclusive, for the purpose of determining whether the garnishee was liable under the process issued against him and to which process his answer was directed.

Indeed, all the facts stated in the "further" answer of the garnishee were, in legal effect, substantially irrelevant to the issue between the plaintiff and the garnishee, since they referred not to the garnishee's liability to the defendant, but propounded a distinct and independent claim which the garnishee asserted existed in his favor as against the defendant, as a basis on his part for claiming property which was already in the possession of the court under the attachment, and held as the property of the defendant in attachment. This was the view taken by the garnishee of his rights on the subject, for the answer in the garnishment concluded simply by asking that the garnishee be discharged from the proceedings. And on the same day he intervened in the main action and filed his interplea asserting in his behalf a right of possession to the cattle seized and demanding damages for their detention. The judgment below, then, not alone caused the failure to traverse the answer to conclude the plaintiff as to the issues which could legally arise on the garnishment, that is, the liability of the garnishee thereunder, but it also made the failure to traverse operate as a summary and conclusive finding in favor of the garnishee on his interplea in the action, which was a wholly independent and distinct proceeding from the garnishment itself. The reasoning necessarily went further than this, since by relation it caused the answer of the garnishee to become conclusive between the plaintiff and the defendant, thereby setting aside the seizure made before the garnishment issued, falsifying and destroying the return of the sheriff that he had levied upon the property of the defendant, and in effect decided the case in favor of the defendant without proof and without a hearing.

Nor can a different conclusion be reached by considering that in the further answer of the garnishee it was stated that

he had been notified of an assignment of the rights of the defendant Campbell Company under the contract, purporting to have been made prior to the levy of the attachment. This was not pertinent to the question of the liability of the garnishee under the garnishment proceedings, and could not operate to conclusively establish as between the plaintiff and the defendant, or as between the plaintiff and the alleged assignee, either the verity or the legal sufficiency of the alleged assignment.

Aside, however, from the foregoing consideration, the record established a condition of facts which relieved the plaintiff from the necessity of traversing the answer of the garnishee, in so far as that answer referred to the independent facts substantiating the intended claim of the garnishee to the right of possession of the property already under seizure, and which, moreover, estopped the garnishee, and, therefore, the defendant, from asserting any right of possession by reason of the facts alleged in the further answer. Before the time for traverse had expired, and at the date when a motion filed by Pierce, as garnishee and interpleader, to discharge the attachment on the ground of his assumed right of possession under the contract, had been noticed for hearing, the court, by the consent of plaintiff and the garnishee, (the only parties who had up to that time appeared in the cause,) appointed the garnishee Pierce receiver, to dispose at private sale of the cattle, which had been levied upon, to pay from the proceeds the claim of Pierce, by virtue of his contract, and to hold the balance subject to the final order of the court. Obviously, this order, and the rights which Pierce took under it were wholly incompatible with the assumption that he was entitled to the possession of the property levied upon as the owner thereof. By the effect of the order, he was to be paid the full purchase price of the cattle. He could not take the price and keep the cattle. The situation was this: At the time the Campbell Company made its motion to dismiss for want of jurisdiction, the garnishee had taken substantial rights which had for their inevitable legal effect to render unnecessary any traverse of so much of his answer as referred to his rights

under the supposed contract, and which also disposed of his interplea and claim of individual right to the possession of the property levied on under the attachment; yet the result of the judgment rendered below was to dismiss the action at the instance of the defendant on the ground of supposed rights vested in the garnishee, when the garnishee himself had disclaimed or had abandoned the assertion of such presumed rights.

As the foregoing reasons dispose of the view of the case taken by the lower court, we confine ourselves to them. Because, however, we do so, we must not be understood as intimating that the defendant had the right to assail the jurisdiction of the court, or question the right of the court to order the giving of notice by publication, on the ground that it was not the owner of the property actually levied upon, and that the affidavit for publication was untrue in stating that the defendant had property within the jurisdiction, when if it were not such owner no prejudice could come to it, as the judgment of the court, from the nature of the proceeding before it, could necessarily only operate upon the property levied on. Nor, moreover, must we be considered as assenting to the construction given by the court to the contract between the Campbell Company and Pierce, the court, in its recital of the facts, stating that under the contract Pierce had a vendor's lien for the amount of the purchase price upon the cattle which had been levied upon, but in the opinion construing the contract as not divesting Pierce of the title to the cattle.

Although the court below based its conclusion only upon one of the grounds taken in the plea of the defendant to the jurisdiction, it nevertheless in the course of its opinion stated that the whole plea was before it, and that all the grounds therein stated were open for its consideration. We, therefore, shall briefly consider such of the remaining grounds stated in the plea to jurisdiction as have been urged in argument upon our attention.

I. It is contended that the attachment proceedings were void and that the court consequently was without jurisdiction,

because the order for attachment was signed by the probate judge, acting in the absence of the district judge, conformably to a power to that effect given by the territorial statute. The claim is that the statute conferring such power upon the probate judge was repugnant to the organic act and void, for the following reason: The organic act authorized the establishment of a Supreme Court and district courts to be vested with "chancery as well as common law jurisdiction and authority for redress of all wrongs committed against the Constitution or laws of the United States or of the Territory affecting persons or property." The grant of common law jurisdiction, it is argued, embraced authority to issue attachments. Being then within the jurisdiction expressly vested in the courts named, it was incompetent for the territorial legislature to delegate to the probate courts, which the organic act authorized to be established, or to a judge of such a court, any jurisdiction in the premises, even although the organic act empowered the legislature to define and limit the jurisdiction to be exercised by probate courts.

A review of this contention is rendered unnecessary, because of the mistaken premise upon which it rests. On the face of the Oklahoma statute it is apparent that it is required as a prerequisite to the issuance of an attachment that the affidavit, in support thereof, shall simply state the particular ground for attachment mentioned in the act, and therefore that the granting of an order for attachment does not involve the discharge of a judicial function, but merely the performance of a ministerial duty, that is, the comparison of the language of the affidavit with the terms of the statute. The text of the statute is stated in the margin.[1] This statute is a reproduc-

---

[1] SEC. 4120. Where a debtor has sold, conveyed or otherwise disposed of his property with the fraudulent intent to cheat or defraud his creditors, or to hinder or delay the collection of their debts, or is about to make such sale or conveyance or disposition of his property, with such fraudulent intent, or is about to remove his property, or a material part thereof, with the intent or to the effect of cheating or defrauding his creditors, or of hindering them or delaying them in the collection of their debts, a creditor may bring an action on his claim before it is due and have an attachment against the property of the same debtor.

tion of a statute of Kansas; and, in 1884, before the organi-- zation of the Territory of Oklahoma, the Supreme Court of Kansas, in *Buck* v. *Panabaker*, 32 Kansas, 466, had recognized the power of a probate judge to grant a writ of attachment in cases provided by law, while it had early held, in *Reyburn* v. *Brackett*, 2 Kansas, 227, under a statute containing require- ments as to the statements to be made in the affidavit for an attachment like unto those embodied in the statute of Oklahoma now under consideration, that the authority vested in an official to grant the writ imposed a duty simply minis- terial in its nature. It is elementary that where the ground of attachment may be alleged in the language of the statute, the authority to allow the writ need not be exercised by the judge of the court, but may be delegated by the legislature to an official, such as the clerk of the court. *Reyburn* v. *Brackett*, 2 Kansas, 227; *Wheeler* v. *Farmer*, 38 California, 203; *Harrison* v. *King*, 9 Ohio St. 388; Drake on Attachments, 7th ed. p. 92. The cases cited and relied upon by counsel as holding to the contrary do not sustain what is claimed for them. In some of them, *Reyburn* v. *Brackett*, 2 Kansas, 227; *Simon* v. *Stetter*, 25 Ohio St. 388; and *Harrison* v. *King*, 9 Ohio St. 388, the rule we have stated is upheld; in others, *Morrison* v. *Lovejoy*, 6 Minnesota, 183, and *Guerin* v. *Hunt*, 8 Minnesota, 477, 487, the particular statute under consideration was construed as requiring, on the part of the officer allowing the writ, a weighing and determination of the sufficiency of the proof; whilst, again, in others, *Seidentopf* v. *Annabil*, 6 Nebraska, 524, and *Howell* v. *Circuit Judge*, 88 Michigan, 369, the statute expressly required that the writ should be allowed by a judge, and hence the clerk of the court was held incompe-.

---

SEC. 4121. The attachment authorized by the last section may be granted by the court in which the action is brought, or by the judge thereof, or in his absence from the county by the probate judge of the county in which the action is brought; but, before such action shall be brought or such attachment shall be granted the plaintiff, or his agent or attorney, shall make an oath in writing showing the nature and amount of the plaintiff's claim, that it is just, when the same will become due, and the existence of some one of the grounds for an attachment enumerated in the preceding section.

tent to issue the writ without the previous authorization of the order by the court.

Nor does section 3 of the act of Congress of December 21, 1893, c. 5, 28 Stat. 20, empowering the Supreme Court of the Territory or its Chief Justice to designate any judge to "try" a particular case in any district where the regular judge is for any reason unable to hold court, constitute an implied prohibition against the conferring by the legislature of authority upon one not a judge of the court in which the main action is pending to perform a ministerial act like that here considered.

II. It is insisted that "under the organic act of the Territory, the court could not acquire jurisdiction of the person of the defendant by constructive service by foreign attachment without its consent."

The section of the organic act referred to requires that all civil actions shall be brought in the county where a defendant resides or can be found. In a proceeding by attachment of property, which is in the nature of an action *in rem*, it is elementary that the defendant is found, to the extent of the property levied upon, where the property is attached. It would be an extremely strained construction of the language of the act to hold that Congress intended to prohibit a remedy universally pursued, that of proceeding against the property of non-residents in the place in the territory where the property of such non-resident is found.

III. The only remaining contention to be considered is the claim that the territorial statute authorizing the issue of an attachment against the property of a non-resident defendant in the case of an alleged fraudulent disposition of property is repugnant to the Fourteenth Amendment to the Constitution of the United States and in conflict with the Civil Rights Act. The law of the Territory, it is said, in case of an attachment, for the cause stated, against a resident of the Territory requires the giving of a bond by the plaintiff in attachment as a condition for the issue of the writ, whilst it has been construed to make no such requirement in the case of an attachment against a non-resident. This, it is argued,

is a discrimination against a non-resident, does not afford due process of law, and denies the equal protection of the laws. The elementary doctrine is not denied that for the purposes of the remedy by attachment, the legislative authority of a State or Territory may classify residents in one class and non-residents in another, but it is insisted that where non-residents "are not capable of separate identification from residents by any facts or circumstances other than that they are non-residents — that is, when the fact of non-residence is their only distinguishing feature — the laws of a State or Territory cannot treat them to their prejudice upon that fact as a basis of classification."

When the exception, thus stated, is put in juxtaposition with the concession that there is such a difference between the residents of a State or Territory and non-residents, as to justify their being placed into distinct classes for the purpose of the process of attachment, it becomes at once clear that the exception to the rule, which the argument attempts to make, is but a denial, by indirection, of the legislative power to classify which it is avowed the exception does not question. The argument in substance is that where a bond is required as a prerequisite to the issue of an attachment against a resident, an unlawful discrimination is produced by permitting process of attachment against a non-resident without giving a like bond. But the difference between exacting a bond in the one case and not in the other is nothing like as great as that which arises from allowing processes of attachment against a non-resident and not permitting such process against a resident in any case. That the distinction between a resident and a non-resident is so broad as to authorize a classification in accordance with the suggestion just made is conceded, and, if it were not, is obvious. The reasoning then is, that, although the difference between the two classes is adequate to support the allowance of the remedy in one case and its absolute denial in the other, yet that the distinction between the two is not wide enough to justify allowing the remedy in both cases, but accompanying it in one instance by a more onerous prerequisite than is

exacted in the other. The power, however, to grant in the one and deny in the other of necessity embraces the right, if it be allowed in both, to impose upon the one a condition not required in the other, for the lesser is necessarily contained in the greater power. The misconception consists in conceding, on the one hand, the power to classify residents and non-residents, for the purpose of the writ of attachment, and then from this concession, to argue that the power does not exist, unless there be something in the cause of action, for which the attachment is allowed to be issued, which justifies the classification. As, however, the classification depends upon residence and non-residence, and not upon the cause of action, the attempted distinction is without merit.

The foregoing considerations dispose not only of the grounds passed upon by the court below, but those pressed upon our attention and which were subject to review in that court; and as from them we conclude there was error in the judgment of the lower court, its judgment must be

*Reversed, and the case remanded for further proceedings in conformity to this opinion.*

| 173 | 99 |
| L-ed | 628 |
| 175 | 100 |
| 175 | 108 |