Price, J.
The evidence heard in the circuit court has not been brought, into the record by bill of exceptions, and that court made no finding of facts; consequently we have nothing to review in reference to the evidence admitted on the issues joined by the pleadings. According to the judgment entry, the lower court granted a perpetual injunction against the county auditor and county surveyor on the sole ground that section 3 of an act of the general assembly, passed on the fifteenth day of April, 1902, found in 95 O. L., 155, under which the officers were proceeding, is unconstitutional, and that is the only question for determination here.
In this state of the record, we have nothing to do with many averments of the petition and their denial by the answer, for they present .issues of fact which are not before us. Among these are questions as to the fairness of the apportionment of the costs and *563 expenses of cleaning out the ditch, and whether it was for a public purpose, or merely for the private benefit of certain named persons who asked for the improvement.
In taking up the question of constitutional law, a preliminary observation will assist in understanding our subject. The general provisions of our statutes for the location and construction of ditches, drains, and water courses, with some changes and variations, have been in operation for many years.
It is declared by the pleadings that the ditch about to be cleaned out by virtue of the proceedings; enjoined, was established in the year 1886, and that, it was constructed during that year. It now deserves-the name of an old ditch, and by reason of its location and construction under the laws then and now in operation, it is a public water course. It is; expressly so declared by section 4500, Revised. Statutes.
In order to procure its original location and construction, it was incumbent upon the petitioners, therefor, among other things, to state in their petition and show at the hearing before the commissioners, that the proposed ditch would be conducive to the public health, convenience or welfare, and it was. necessary for the commissioners to find and record' that important fact in order to give them jurisdiction to establish the ditch. Such a finding was essential because the improvement petitioned for contemplated the appropriation of private property, which could only be done for a public use. We assume, the proceedings which resulted in the location and construction of the original ditch were conducted as the law required, and that it was found and recorded by the county commissioners that the ditch, when con *564 structed, would promote the public health, convenience and welfare. For that public purpose, lands could he, and no doubt were appropriated, for which, under our constitution, the owners were entitled to compensation and damages, and if the award of the commissioners was not satisfactory, there was a right of appeal to the probate court, where the land owner could be heard before a constitutional jury as to such compensation and damages, and other questions.
The statute furnished the owner of lands taken for the ditch, a ready and convenient remedy for the enforcement of the constitutional guarantees for the protection of his rights. No doubt the land owners, who desired to do so, availed themselves of all these provisions m-ade in their behalf.
Another observation is likewise pertinent. Our ditch laws are the exercise of police power committed to the .general assembly. This was held in Sessions v. Crunkilton, 20 Ohio St., 349. The proposition there stated is, that the construction of drains by townships in cases where the public health, convenience and welfare demand it, is within the meaning of “police powers” mentioned in section 7 of article 10 of our state constitution. The means of promoting and conserving the public health and welfare provided by legislation, are so provided in the exercise of the police powers existing in the general assembly. And section 3 now involved, prescribes one of the methods of promoting the public health, convenience and welfare. It reads: “Provided, however, that when a ditch needs to be cleaned out, any resident owner of any tract of land which was assessed for the construction may make a sworn statement to the county auditor, in writing, setting *565 forth such necessity. And when said written sworn statement is made within three years from the' original construction, or for material improvement by deepening and widening said ditch, and as often thereafter as may be necessary to keep said ditch in good repair, said county auditor shall forthwith notify the county surveyor to examine the said ditch, who shall go without unnecessary delay, upon the line thereof, and make an estimate of the amount of money required therefor and fix the portion thereof that the owner of said tract of land and each corporation, county, or township assessed for the construction of the ditch, shall be assessed for such cleaning out; and such assessment shall be made according to the benefits; unless the necessity for the cleaning out arose from the act or neglect of some land owner or corporation, in which case such act or neglect shall be considered. Said county surveyor shall return his estimate and assessment to said auditor in writing, who shall appoint a day for' hearing the same, and direct said county surveyor to give notice thereof to each owner of land and corporation affected thereby when said auditor may make such changes therein as he may deem right and proper; he shall enter upon a journal to be kept for that purpose the assessment as approved by him, and he shall place such assessment upon the duplicate against the land, upon which they are assessed, to be collected as other taxes; the work of cleaning out the ditch shall be advertised, sold and let, and the contracts therefor performed, as provided in this chapter; the contractor shall be paid, by warrant of the county auditor upon the county treasurer, out of the assessments so made, and paid upon the certificates of said county-surveyor, that he has performed his contract; but if *566 at the presentation of any certificate all the assessment have not been paid, payments shall be made thereon pro rata. ’ ’
This section was amended April 22, 1904, by changing the latter part to read as follows: “The contractor shall be paid by warrant of the county auditor upon the county treasurer, out of any funds in the treasury applicable to such purpose. When the whole contract is completed the entire price may be paid in the manner aforesaid. ’ ’
Section 3 is one of many comprising an act entitled “An act to provide for the cleaning out, and keeping in repair of public ditches, drains and water courses, and to repeal an act passed April 13, 1900,” and certain other sections; The purpose of the entire act, as its title indicates, is to regulate cleaning out and keeping in repair the ditches which have been established by county commissioners or township trustees, embracing the removal of obstructions and restoration and repair of flood gates. Surely it is within the police power of the general assembly to designate certain officers of a county, or township, who may, in a prescribed mode, upon application and due notice to parties interested, restore our public drains and water courses to their original condition. Judicial authority is not essential, for all parties in interest were duly heard before the tribunal appointed by law when the original construction was ordered.
The petition charges that the section quoted, violates section 19 of article 1 of the state constitution, which, in part, reads:
“Private property shall ever be held inviolate, but subservient to the public welfare, * * * and '.in all other cases where private property shall be *567 taken for public use, a compensation therefor shall first be made in money, or secured by a deposit of money; and such compensation shall be assessed by a jury without deduction for benefits to any property of the owner.”
We are unable to see how the statute assailed, conflicts with . this fundamental law. The property occupied by the ditch was taken by its original construction when the parties along its line whose lands were taken, had ample opportunity to obtain compensation, and if they applied for the same, we must assume their applications were considered and proper awards made.
But the proceeding to clean out the original channel under section 3, does not seek or attempt to appropriate any lands of the defendants in error. Its sole purpose is to restore the water course to its former condition of usefulness. There is nothing for which the land owners are entitled to any compensation, for they part with nothing. The petition also alleges that the section is unconstitutional, “for the reason that no discretion is given to any officer, board, or tribunal to determine or decide whether the improvement * * * is for the public health, convenience and welfare, but makes the duties to be performed under said act mandatory upon said auditor and surveyor.” Again we think the section is misconstrued. When the ditch was established originally, it was alleged by the petition and determined by the 'commissioners, that the ditch was necessary and its construction would be conducive to the public health, convenience and welfare. We say this, because the law required the petition to so allege and the commissioners to so find before the ditch could be legally established. -
*568 The. questions settled by the original proceedings imply that to subserve the public good the ditch should remain open and free from obstruction. Hence, the questions concerning the public health, convenience and welfare have been once settled and need not be re-asserted in the new proceeding.
The petition also complains that if the assessments made by the auditor become liens on the lands and are enforced, the land owners will be deprived of their property without due process of law. While it is not cited by counsel or by the circuit court, we presume that section 16 of article 1 of our bill of rights was in contemplation when the proposition was made. It provides that “all courts shall be open, and every person, for injury doné him in his land, goods, person or reputation shall have remedy by due course of law; and justice administered without denial or delay.”
Section 3 of the act involved provides that when the sworn statement of the resident land owner is filed with the auditor he shall notify the county surveyor to examine the ditch, and for that purpose to go upon its line, and make an estimate of the amount of money required for the cleaning out, and fix the portion that each land owner, who was assessed for the original construction of the ditch should be assessed for the improvement, which new assessment must be made according to the benefits. The surveyor must return the result of his examination and his estimate to the auditor, who shall appoint a day for the hearing of the report, of which due notice shall be given. The auditor is authorized on the hearing to make such changes in the assessment as he deems just, and when corrected and confirmed, *569 the assessment is placed on the duplicate. The work shall be advertised and publicly let.
Notwithstanding the assertion of the defendants in error, we think the surveyor, if he finds upon his examination that the ditch does not need cleaning out, he is authorized, and would be expected to so report to the auditor, and that his judgment is not so fettered as counsel imagine, that he must report in favor of an assessment. If on the hearing before the auditor, the latter should find that cleaning out is not necessary, he may so declare and act accordingly by refusing to place any assessment upon the property along the ditch. The statute is not so one-sided as counsel contend, when it is fairly construed with relation to the subject-matter. The petition for the injunction alleges that on the day of hearing “said auditor heard all proof offered by the parties affected by the proposed ¿leaning out of said ditch, and found that the same (the assessments) was in all respects fair and just according to.the benefits.”
We are of opinion that the legislature can constitutionally confer upon the surveyor and auditor the powers prescribed in section 3, and according to many authorities, the exercise of such powers, in accordance with the act, is due process of law.
However, the hearing and findings by the auditor are not conclusive upon the interested parties. It is true there is no provision in the section for appeal or prosecuting error, and if the rights of the parties are concluded by the findings of the auditor, the property of defendants in error might be taken without due course, or due process of law. But they are not so concluded. For cases arising under the general ditch laws we have section 4491, Revised Statutes, but it may not cover the special proceedings before *570 us. But section 5848, Revised Statutes, which is a part of our code of civil procedure, does apply, and furnishes an ample remedy to vindicate any right the land owner may have to urge against the assessment. This section provides: “Courts of common pleas and superior courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover hack such taxes or assessments as have been collected without regard to the amount thereof * * *.”
This section furnishes due course or due process of law. Under its provisions the courts of the state are open for the redress of any wrongs that may be done by taxation or assessments. The defendants in error have availed themselves of this remedy in the very case before us.
In Adler v. Whitbeck, 44 Ohio St., 571, Minshall, J., after discussing authorities and the section of the constitution we -are considering and also the fourteenth amendment of the federal constitution, says: “By these decisions, such laws may be in harmony with that amendment (the fourteenth), although they do not provide for giving a party an opportunity to be present when the tax is assessed against him and to be there heard, if they give him the right to be heard afterward in a suit to enjoin the collection in which both the validity of the tax and the amount of it may be contested; and it is immaterial to this question that the party to the suit is required, as in other injunction cases, to give • security when instituting the suit.” The learned judge cites McMillen v. Anderson, 95 U. S., 37; Hagar v. Reclamation District, 111 U. S., 701; Davidson v. New Orleans, 96 U. S., 97. To these we add 103 U. S., 182; 104 U. S., 78.
*571 We cite State ex rel. v. Jones, Auditor, 51 Ohio St., 492-513. The latter case decides that section 5848 provides dne course of law in cases of taxation and assessment.
In Hagar v. Reclamation District, supra, it appears that the legislature of California passed an act establishing a general system for reclaiming swamps and overflowed, salt marsh and tide lands in the state. The facts are fully stated in the opinion of the above case, and we do not repeat them here. Hagar, whose lands were about to be sold to pay his assessment for the drainage, contended that his property was being taken without due process of law, inasmuch as the assessment was made without opportunity to him to be heard respecting it; that it was made' without notice to him, and that the reclaiming statute contained no provision for such notice or hearing, and it was therefore invalid. He claimed that notice arid opportunity to be heard were essential to render any proceeding “due process of law,” which may lead to the deprivation of life, liberty or property. The opinion by Justice Field contains an able discussion of what constitutes “due process of law.”
On page 710, referring to the provision of the California statute, for fixing the value of the lands by assessors appointed, in order to ascertain a just basis for assessment, the learned justice says, “The officers in estimating the value, act judicially; and in most states provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law to hear complaints respecting the justice of the assessments. The law in prescribing the time when such complaints.will be heard, gives all the notice required, and the proceeding by which *572 the valuation is determined, though it may he followed, if the tax be not paid, by a sale of the delinquent property, is due process of law.
In some states, instead of a board of review or equalization, the assessment may be revised by proceedings in the courts and be there corrected if erroneous, or set aside if invalid; or, objections to the validity or amount of the assessment may be tahen when the attempt is made to enforce it. In such cases all the opportunity is given to the taxpayer to be heard respecting the assessment which can be deemed essential to render the proceedings due process of law. In Davidson v. New Orleans, supra, this court decided this precise point.” The entire opinion of Justice Field is valuable and decisive of the question before us.
Therefore we safely conclude, that section 3 does not jeopardise the property rights of the land owners and deprive them of due process of law. The section is intended as a summary method of restoring water courses, and the agents to accomplish it are certain county officers whose functions are administrative in character, as is the case in very many other provisions for the assessment of property.
The judgment entry of the circuit court shows that section 3 was held to be unconstitutional, but it fails to point out the part of that instrument with which it is in conflict. Counsel for defendants in error attach to their brief a copy of the opinion rendered in the case which is reported in 27 O. C. C., 245. That court holds that section 3 “is unconstitutional because it unjustly discriminates between different applicants for such improvement with respect to costs.” And near the close, of the opinion it is said, in comparing section *573 3 with section 2 of the act, “This would appear to he unequal legislation and unjust discrimination against the fair minded citizen and violative of the bill of rights. ’ ’
This attack on the law is very general, and therefore very indefinite. But a word about the comparison of the two sections is proper in this connection. Section 2 allows any one who was assessed for the original construction of the ditch to apply to the commissioners for its cleaning out, and he is required to give bond for the payment of costs, if the application is not granted. Section 3 authorizes any resident owner of land which was assessed for the construction of the ditch to make the sworn statement to the auditor of the necessity of the cleaning out, and he is not required to give bond. In the comparison, why not say section 2 is invalid because it requires a bond, while section 3 requires none? We presume that it is competent for the legislature to require such bonds in all cases, or not to require them in any case; it may provide for bonds in certain proceedings and not require them in others. We know of no constitutional regulation or prohibition on the subject. It is altogether a matter of legislative discretion, and not a matter of constitutional law. To proceed under section 3 is a simple and less expensive method. Sections 1 and 19 of the same act provide for like summary action. Section 1 provides for the removal of obstructions and section 19 for the repair and restoration of flood-gates. In a proceeding to remove obstructions under section 1, no bond is required, while a proceeding under section 19 requires the giving of a bond. Both proceedings are of a summary nature, and the law is not invalid, because a bond is required in one and not in the other.
*574 It is also urged' against the law that it discriminates as between resident and non-resident land owners. Under section 3, the resident land owner only is authorized to make the sworn statement, while under section 2 and other sections of the general ditch law, land owners, without regard to residence, may petition for the improvement. This distinction is considered by the circuit court as another unconstitutional discrimination.
If this view is sound, it unsettles many old statutes of this state, many of which have been in operation for more than half a century, and which have, at one time or another, been before the courts for construction and judgment.' For more than half a century county roads have been established on petition of free-holders resident of the vicinity of the proposed road. County line roads have been established on the petition of the inhabitants along the line. Roads have been vacated on the petition of twelve freeholders residing in that part of the county. The law requires the petitions to be so signed. Petitions for free turnpikes and roads under the one-mile assessment act, must be signed by resident free-holders, and remonstrances against the latter must be signed by the same class. It is useless to cite other statutes for public improvements that contain like discrimination in favor of residents of the state. It is not obnoxious to the constitution to classify owners of property into residents and non-residents. The policy of the legislature that first cares for our own citizens, is not vicious, and if it accords to residents of Ohio rights and privileges not conferred upon residents of another state, the general assembly is simply performing a duty peculiarly within its authority.
*575 We therefore have divorce laws requiring the applicant for divorce to be a bona fide resident of Ohio one year next before filing his or her petition. If a suitor is a non-resident he may be required to give security for costs, and if one who has been a resident removes from the county or state while his action is pending, he may be required to give security for costs. So with regard to our exemption laws. They are for the benefit of a certain class of our own citizens, and for the purpose of exemptions, our own citizens are classified. The list of illustrations might be extended if necessary. One more will be sufficient. It is found in our attachment laws. Non-residence of the state is made a ground for attachment, and that, too, without bond, while bond is ■required if the writ is asked on other grounds. The discrimination against non-residents by such legislation was the subject of judicial determination in Central Loan & Trust Co. v. Campbell, 173 U. S., 84. The fifth section of the syllabus reads: “That the territorial statute (Oklahoma) authorizing the issue of a writ of attachment against the property of a non-resident defendant, is not repugnant to the fourteenth amendment to the constitution.”
The language of Justice White, rendering the opinion, so well meets every contention made in this ■branch of our case, that we freely quote from it as follows:
“The only remaining contention to be considered is the claim that the territorial statute authorizing the issue of an attachment against the property of a non-resident defendant in the case of an alleged fraudulent disposition of property is repugnant to the fourteenth amendment to the Constitution of the United States and in conflict with the Civil *576 Rights Act. The law of the territory, it is said, in case of an attachment, for the cause stated, against a resident of the territory requires the giving of a bond by the plaintiff in attachment as a condition for the issue of the writ, whilst it has been construed to make no such requirement in the case of an attachment against a non-resident. This, it is argued, is a discrimination against a non-resident, does not afford due process of law, and denies the equal protection of the laws. The elementary doctrine is not denied that for the purposes of the remedy by attachment, the legislative authority of a state or territory may classify residents in one class and non-residents in another, but it is insisted that where non-residents ‘ are not capable of separate identification from residents by any facts or circumstances other than that they are non-residents — that is, when the fact of non-residence is their only distinguishing feature— the laws of a state or territory cannot treat them to their prejudice upon that fact as a basis of. classification. ’
“When the exception, thus stated, is put in juxtaposition with the concession that there is such a difference between the residents of a state or territory and non-residents, as to justify their being placed into distinct classes for the purpose of the process of attachment, it becomes at once clear that the-exception to the rule, which the argument attempts to make, is but a denial, by indirection, of the legislative power to classify which it is avowed the exception does not question. The argument in substance is that where a bond is required as a prerequisite to the issue of an attachment against a resident, an unlawful discrimination is produced by permitting process of attachment against a non-resident with *577 out giving a like bond. But tbe difference between exacting a bond in the one case and not in the other is nothing like as great as that which arises from allowing processes of attachment against • a nonresident and not permitting such process against a resident in any case. That the distinction between a resident and a non-resident is so broad as to authorize a classification in accordance with the suggestion just made is conceded, and, if it were not, is obvious. The reasoning, then is, that, although the difference between the two classes is adequate to support the allowance of the remedy in one case and its absolute denial in the other, yet that the distinction. between the two is not wide enough to justify allowing the remedy in both cases, but accompanying it in one instance by a more onerous prerequisite than is exacted in the other. The power, however, to grant in the one and deny in the other of necessity embraces the right, if it be allowed in both, to impose upon the one a condition not required in the other, for the lesser is necessarily contained in the greater power. The misconception consists in conceding, on the one hand, the power to classify residents' and non-residents, for the purpose of the writ of attachment, and then from this concession, to argue that the power does not exist, unless there be something in the cause of action, for which the attachment is allowed to be issued, which justifies the classification. As, however, the classification depends upon residence and non-residence, and not upon the cause of action, the attempted distinction is without merit. ’ ’
It seems that the court was unanimous in the above opinion, and it deserves both ourrespect and confidence. The statute in question may be unwise, and *578 ill-designéd, but its amendment or repeal is for the law-making power and not for the courts.
The judgment of the circuit court is reversed, injunction dissolved, and the petition with its amendments is dismissed.

Judgment reversed.

Davis, C. J., Crew and Summers, JJ., concur.*